IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

DRUMMOND COMPANY, INC.       )
                             )   Civil Action No. _____
       Plaintiff,        )
                             )   (Case No. 2:11-CV-3695-RDP pending
v.                       )   in the Northern District of Alabama,
                             )   Southern Division)
TERRENCE P. COLLINGSWORTH,  )
individually and as an agent of Conrad & )   **MEMORANDUM OF POINTS AND**
Scherer, LLP; and CONRAD & SCHERER, )   **AUTHORITIES IN SUPPORT OF**
LLP,                         )   **DEFENDANTS' MOTION FOR**
                             )   **PROTECTIVE ORDER AND/OR**
       Defendants.      )   **MOTION TO QUASH SUBPOENA**
                             )   **TO PARKER WAICHMAN, LLP**
                             )
                             )

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................1

II.     PROCEDURAL AND FACTUAL HISTORY.......................................................1

III.    LEGAL ARGUMENT...........................................................................3

A.      The Subpoena Should be Quashed in its Entirety Because this Court Lacks
        Jurisdiction to Issue a Subpoena Requiring Production in Alabama..........................3

        B.      A Protective Order Should Be Issued or, in the Alternative, the
                Subpoena Should Be Quashed Because It Seeks Privileged Material
                and Attorney Work Product.................................................................3

        C.      The Subpoena Should Be Quashed Because it Seeks the Same Documents
                as Those Requested from the Defendants and the Information Drummond
                Seeks Should Be Requested from a Party.................................................7

        D.      The Subpoenas Should Be Quashed Because the Requests are Overly
                Broad and Drummond is on a Fishing Expedition for Information that
                Is Not Relevant or Likely to Lead to the Discovery of Admissible
                Evidence....................................................................................11

        1.      Requests 1-8: Documents Related to Payments......................................14

        2.      Requests 9-10: Documents Related to Witness Testimony...........................15

        E.      The Court Should Impose Sanctions Against Drummond for Misuse of
                Its Subpoena Power........................................................................15

IV.     CONCLUSION.................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Int'l Life Assurance Co. v. Vasquez,*
　　No. 02 Civ. 141, 2003 WL 548736 (S.D.N.Y. Feb. 25, 2003) .......................................... 16

*Barrera v. Boughton,*
　　3:07CV1436 RNC, 2010 WL 3926070 (D. Conn. Sept. 30, 2010) ................................. 13

*Bridgeport Music Inc. v. UMG Recordings, Inc.,*
　　05CIV.6430(VM)(JCF), 2007 WL 4410405 (S.D.N.Y. Dec. 17, 2007) ......................... 13

*Builders Ass'n of Greater Chicago,*
　　96 C 1122, 2002 WL 1008455 (N.D. Ill. May 13, 2002) ................................................. 16

*Burns v. Bank of Am.,,*
　　03 CIV.1685 RMB JCF, 2007 WL 1589437 (S.D.N.Y. June 4, 2007) ........................... 10

*Calabro v. Stone,*
　　224 F.R.D. 532 (E.D.N.Y. 2004) ..................................................................................... 13

*Cohen v. City of New York,*
　　255 F.R.D. 110 (S.D.N.Y. 2008) ..................................................................................... 10

*Concord Boat Corp. v. Brunswick Corp.,*
　　169 F.R.D. 44 (S.D.N.Y. 1996) ....................................................................................... 12

*Crosby v. City of New York,*
　　269 F.R.D. 267 (S.D.N.Y. 2010) ..................................................................................... 11

*Cusumano v. Microsoft Corp.,*
　　162 F.3d 708 (1st Cir. 1998) .............................................................................................. 7

*During v. City Univ. of N.Y.,*
　　No. 05 Civ. 6992, 2006 WL 2192843 (S.D.N.Y. Aug. 1, 2006) ..................................... 11

*Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd.,*
　　02CIV.2605(AGS)(JCF), 2002 WL 31413681 (S.D.N.Y. Oct. 25, 2002 .......................... 9

*Golden Trade, S.r.L. v. Jordache,*
　　143 F.R.D. 508 (S.D.N.Y. 1992) ....................................................................................... 6

*Haber v. ASN 50th St., LLC,*
　　272 F.R.D. 377 (S.D.N.Y. 2011) ..................................................................................... 10

iii

*Hasbro, Inc. v. Serafino,*
    168 F.R.D. 99 (D. Mass. 1996) ............................................................. 9

*Hickman v. Taylor,*
    329 U.S. 495 (1947) ............................................................................ 6

*In re Biovail Corp. Secs. Litig.,*
    247 F.R.D. 72 (S.D.N.Y. 2007) .......................................................... 8

*In re Candor Diamond Corp.,*
    26 B.R. 847 (Bankr. S.D.N.Y. 1983) ................................................. 8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
    02 CIV. 3400, 2005 WL 6457182 (S.D.N.Y. Sept. 21, 2005) ........... 14

*In re Fosamax Products Liab. Litig.,*
    74 Fed. R. Serv. 3d 190, 2009 WL 2395899 (S.D.N.Y. 2009) .......... 3

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.,*
    269 F.R.D. 360 (S.D.N.Y. 2010) ....................................................... 4

*In re Shubov,*
    253 B.R. 540 (B.A.P. 9th Cir. 2000) ................................................. 16

*Insulate America v. Masco Corp.,*
    227 F.R.D. 427 (W.D.N.C.2005) ....................................................... 3

*Ireh v. Nassau Univ. Med. Ctr., CV06-09 LDW/AKT,*
    2008 WL 4283344 (E.D.N.Y. Sept. 17, 2008) .................................. 11

*Jackson v. AFSCME Local 196,*
    246 F.R.D. 410 (D. Conn. 2007) ....................................................... 13

*Joiner v. Choicepoint Services, Inc.,*
    2006 WL 2669370 (W.D.N.C. Sep 15, 2006) ................................... 10

*Langford v. Chrysler Motors Corp.,*
    513 F.2d 1121 (2d Cir. 1975) ............................................................. 4

*Linde v. Arab Bank, PLC,*
    262 F.R.D. 136 (E.D.N.Y. 2009) ...................................................... 13

*Linder v. Calero-Portocarrero,*
    180 F.R.D. 168 (D.D.C. 1998) .......................................................... 13

*Lopez v. City of New York,*
    05-CV-3624, 2007 WL 869590 (E.D.N.Y. Mar. 20, 2007) .............. 6

*Malmberg v. United States,*
    506-CV-1042 FJS/GHL, 2010 WL 1186573 (N.D.N.Y. Mar. 24, 2010) ........................... 4

*Melder v. State Farm Mut. Auto. Ins. Co.,*
    2008 WL 1899569 (N.D. Ga. Apr. 25, 2008) ................................................................... 6

*Minibooster Hydraulics A/S v. Scanwill Fluid Power Aps,*
    2007 WL 1526421 (W.D.N.Y. May 23, 2007) ................................................................ 10

*Molefi v. Oppenheimer Trust,*
    03 CV 5631 FBVVP, 2007 WL 538547 (E.D.N.Y. Feb. 15, 2007) ................................ 16

*Monsanto Co. v. Victory Wholesale Grocers, MC,*
    08-134DRHWDW, 2008 WL 2066449 (E.D.N.Y. May 14, 2008) ................................... 3

*Nicholas v. Poughkeepsie Sav. Bank/FSB,*
    No. 90 Civ. 1607, 1991 WL 113279 (S.D.N.Y. June 14, 1991) ...................................... 14

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.,*
    03 CIV.1382 RWS, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ................................. 7

*Noel v. The Bank of New York Mellon,*
    11 MC 216, 2011 WL 3279076 (S.D.N.Y. July 27, 2011) ................................................ 8

*Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S. 340 (1978) ................................................................................................. 14, 16

*Rouson ex rel. Estate of Rouson v. Eicoff,*
    04-CV-2734 ARR KAM, 2006 WL 2927161 (E.D.N.Y. Oct. 11, 2006) ........................... 5

*Samad Bros., Inc. v. Bokara Rug Co. Inc.,*
    09 CIV. 5843 JFK KNF, 2010 WL 5094344 (S.D.N.Y. Nov. 30, 2010) ...................... 4, 5

*Segan v. Dreyfus Corp.,*
    513 F.2d 695 (2d Cir. 1975) ........................................................................................... 14

*Snider v. Lugli,*
    CV 10-4026 JFB AKT, 2011 WL 5401860 (E.D.N.Y. Nov. 4, 2011) ............................. 7

*Solarex Corp. v. Arco Solar, Inc.,*
    121 F.R.D. 163 (E.D.N.Y.1988) ....................................................................................... 8

*Travelers Indem. Co. v. Metro. Life Ins. Co.,*
    228 F.R.D. 111 (D. Conn. 2005) ...................................................................................... 7

*Tucker v. Am. Int'l Grp., Inc.,*
    281 F.R.D. 85 (D. Conn. 2012) .................................................................................. 8, 10

*Ungar v. Palestinian Auth.,*
  400 F. Supp. 2d 541 (S.D.N.Y. 2005).................................................................. 5, 11

*United States Steel, LLC v. Tieco, Inc.,*
  261 F. 3d 1275 (11th Cir. 2001) ............................................................................ 12

*United States v. Int'l Bus. Machines Corp.,*
  83 F.R.D. 97 (S.D.N.Y. 1979) ............................................................................ 7, 13

*Upjohn Co. v. United States,*
  449 U.S. 383 (1981).................................................................................................. 6

*W. Res., Inc. v. Union Pac. R.R. Co.,*
  2002 WL 1822432 (D. Kan. July 23, 2002) ........................................................... 12

## RULES AND REGULATIONS

Fed. R. Civ. P. 26 ............................................................................................ 3, 4, 7, 10

Fed. R. Civ. P. 34 .................................................................................................... 10

Fed. R. Civ. P. 45 .................................................................................................. 4, 15

Fed. R. Civ. P. 45 ........................................................................................... 4, 7, 15, 16

## OTHER AUTHORITIES

Charles Alan Wright & Arthur R. Miller,
  *Federal Practice & Procedure* § 2459 (3d ed. 2008) ........................................... 4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR PROTECTIVE ORDER AND/OR MOTION FOR TO QUASH
SUBPOENA TO PARKER WAICHMAN, LLP**

## I.   INTRODUCTION

Defendants Terrence P. Collingsworth and Conrad & Scherer, LLP ("Defendants"),

pursuant to Federal Rules of Civil Procedures 26(c) and 45(c)(3)(A), move for a protective order,

or alternatively, to quash the subpoena directed to Parker Waichman, LLP by Plaintiff

Drummond Co., Inc. ("Drummond").  The subpoena is void and should be quashed in its entirety

because this Court lacks jurisdiction to issue a subpoena requiring the production of documents

in Alabama.  Additionally, even if the subpoena were not void, it seeks documents that are

privileged and attorney work product.  The requests are also duplicative of discovery already

sought from Defendants, as well as overly broad and lacking in relevance.  The parties held a

meet on confer August 1, 2013, but could not resolve their differences.  *See* Exhibit A, attached

to the declaration of Bradley Smith ("Smith Decl.").

## II.   PROCEDURAL AND FACTUAL HISTORY

Drummond filed a defamation action against Defendant Terrence Collingsworth and his

law firm, Defendant Conrad & Scherer, LLP, which is pending in the Northern District of

Alabama, Southern Division.  *See Drummond Company, Inc. v. Collingsworth, et al.*, Case No.

2:11-cv-3695-RDP (N.D. Ala.) ("*Collingsworth*").  Drummond alleges the defamation action

stems from letters written in 2011 by Mr. Collingsworth to Dutch officials and a Japanese CEO

related to Drummond's human rights violations in Colombia.  The letters are based upon facts

gathered by Collingsworth and co-counsel in ancillary cases brought under the Alien Tort Claim

Statute (ATS) and the Torture Victim Protection Act (TVPA) against Drummond Company, Inc.,

Drummond Ltd., and individual officers for human rights violations in Colombia.  Drummond

filed the current defamation action in order to have a second chance at discovery in the human

rights cases and to unduly burden and harass Mr. Collingsworth and his co-counsel.

Since before 2003, which is the temporal scope identified in the subpoena at issue, Mr.

Collingsworth has represented clients bringing claims under the ATS and TVPA against

multinational corporations alleged to have committed serious human rights abuses while

operating abroad.  Mr. Collingsworth first filed a case against Drummond Company, Inc., the

Plaintiff in the underlying defamation action, in 2002.  *See Romero, et al. v. Drummond*

*Company, Inc., et al.*, Case No. CV-03-BE-0575-W (N.D. Ala.) (hereinafter "*Drummond I*"); *see*

*also* Collingsworth Decl. ¶¶ 2-3.  He subsequently filed another human rights case against

Drummond in 2009.  *See Balcero, et al. v. Drummond Company, Inc., et al.*, No. 2:09-CV-1041-

RDP (N.D. Ala.) ("*Balcero*").

Parker Waichman, LLP, the recipient of the subpoena at issue, served as Mr.

Collingsworth's co-counsel in the *Balcero* litigation from October 5, 2010 to February 23, 2012.

Collingsworth Decl. ¶ 4.  Parker Waichman, LLP has had no involvement in litigation against

Drummond before or after those dates.  Additionally, any documents that Parker Waichman,

LLP has or had in its custody, possession or control was provided to them by Defendants.

Given that Parker Waichman, LLP served as co-counsel in *Balcero*, this subpoena seeks

documents protected by attorney-client privilege and the work-product doctrine.  Moreover,

because Parker Waichman, LLP served as co-counsel with Defendant Collingsworth for only a

short period between 2010 and 2012, the requests seeking information dating back to 2003 are

over-broad and are not relevant or likely to lead to the discovery of admissible evidence.

Finally, the requests directed to Parker Waichman, LLP are entirely duplicative of

requests already directed to Defendants in both the *Balcero* litigation and in the underlying

2

defamation action.  As a result, Defendants have already responded twice to Drummond's

document requests, which again are virtually identical to those in the subpoena to Parker

Waichman, LLP.  The intent of this serial discovery, now directed at a third-party to the

litigation, is clearly to harass Mr. Collingsworth and his former co-counsel.

III.    **LEGAL ARGUMENT**

    **A.    The Subpoena Should be Quashed in its Entirety Because this Court Lacks Jurisdiction to Issue a Subpoena Requiring Production in Alabama.**

       The Federal Rules of Civil Procedure require that a subpoena must issue "for

production or inspection, if separate from a subpoena commanding a person's attendance, from

the court for the district where the production or inspection is to be made." Fed. R. Civ. P.

45(a)(2)(C).  This subpoena was issued by the U.S. District Court for the Eastern District of New

York, but commands that documents be produced at the law offices of Starnes Davis Florie LLP,

located in Birmingham, Alabama.  As a result, this Court lacks jurisdiction to issue the subpoena

and it is void.  *See, e.g., Monsanto Co. v. Victory Wholesale Grocers*, MC 08-134DRHWDW,

2008 WL 2066449, at *3 (E.D.N.Y. May 14, 2008) ("The plain language of [Rule 45(a)(2)(C)]

would thus appear to require this court to grant the motion to quash, on the ground that the

subpoena issued from the wrong court.").

    **B.    A Protective Order Should Be Issued or, in the Alternative, the Subpoena Should Be Quashed Because It Seeks Privileged Material and Attorney Work Product.**

       Defendants move for a protective order under Federal Rule of Civil Procedure 26(c), or

to quash pursuant to Rule 45(c)(3), to protect their privileged attorney-client and work-product

material.  *See In re Fosamax Products Liab. Litig.*, 74 Fed. R. Serv. 3d 190, 2009 WL 2395899,

at *2 (S.D.N.Y. 2009) (a subpoena recipient "'may seek from the court protection from

discovery by the overlapping and interrelated provisions of Rules 26 and 45'") (quoting *Insulate*

3

*America v. Masco Corp.*, 227 F.R.D. 427, 432 (W.D.N.C.2005)); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 269 F.R.D. 360, 363 n.14 (S.D.N.Y. 2010) ("Rule 45(c)(3) and Rule 26(c) should be read in conjunction with one another"); *see also* Fed. R. Civ. P. 45 advisory committee's note (1991) ("Paragraph (c) (3) . . . tracks the provisions of Rule 26(c).").

Under Rule 26(c), "[u]pon motion by a party or the person from whom discovery is sought . . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). And under Rule 45 a subpoena ***must*** be modified or quashed if, among other things, it "requires disclosure of privileged or other protected matter . . . or subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A).

A party has "standing to challenge a non-party subpoena with a motion for a protective order or to quash [where] the party is seeking to protect a personal privilege or right." *Malmberg v. United States*, 506-CV-1042 FJS/GHL, 2010 WL 1186573, at *1 (N.D.N.Y. Mar. 24, 2010) (citing *See Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) (upholding the trial court's order quashing a third-party subpoena on plaintiff's motion where the records sought "had no relevance to the main issues in the case."); *see also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2459 (3d ed. 2008) (a party has standing to seek to quash a subpoena issued to someone who is not a party to the action where the party "claims some personal right or privilege with regard to the documents sought.").

Because Drummond's subpoena to Parker Waichman, LLP seeks information protected by attorney-client privilege and the work-product doctrine, Defendants have standing to challenge this subpoena. *See, e.g., Samad Bros., Inc. v. Bokara Rug Co. Inc.*, 09 CIV. 5843 JFK KNF, 2010 WL 5094344, at *3 (S.D.N.Y. Nov. 30, 2010) (plaintiff had "standing to challenge

4

the non-party witness subpoena on the ground of the attorney-work-product doctrine."); *Rouson ex rel. Estate of Rouson v. Eicoff*, 04-CV-2734 ARR KAM, 2006 WL 2927161, at *7 (E.D.N.Y. Oct. 11, 2006) ("courts have found standing where a non-party asserts that the information sought by the subpoena was protected by the attorney-client privilege"); *Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 553 (S.D.N.Y. 2005) (standing to quash third-party subpoena because of "the existence of attorney-client privilege for all documents").  Here, where Mr. Collingsworth is lead counsel in the *Balcero* human rights litigation and is a Defendant in the defamation suit, his interest in protecting any privileged and work-product information held by Parker Waichman, LLP is self-evident.

In this instance, Drummond's requests in the subpoenas are so broad that they seek "any and all documents related or referring to" a given subject, which necessarily includes attorney notes, legal research and analysis, and internal communications regarding case strategy, which are not discoverable.  *See* Exhibit 1 (Drummond Subpoena to Parker Waichman, LLP Requests 1-30 (seeking for each request "any and all documents related or referring to" a given subject)).[1] This is especially true for Request 1-8, which seek all documents related or referring to "requests for payments" or "any form of assistance."  Drummond has not indicated to Defendants that it is not seeking those internal attorney documents, nor has it modified its subpoena to exclude attorney notes or other internal communications.

Other subpoena requests blatantly seek attorney work product, specifically Requests 9 and 10, which seek any and all documents relating to the "anticipated testimony" or "actual testimony" of "individuals incarcerated in Colombia."  These requests seek to impermissibly track Mr. Collingsworth's investigations in the related human rights litigation against

---

[1] All numerical exhibits are attached to the Collingsworth Declaration.

Drummond, including witness statements that are subject to almost absolute protection under the work-product doctrine. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 512 (1947) ("as to oral statements made by witnesses to [attorney], whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production."); *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981) ("some courts have concluded that *no* showing of necessity can overcome protection of work product which is based on oral statements from witnesses."); *Lopez v. City of New York*, 05-CV-3624, 2007 WL 869590, at *2 (E.D.N.Y. Mar. 20, 2007) (holding that "witness statements are protected by the attorney work product privilege."); *Golden Trade, S.r.L. v. Jordache*, 143 F.R.D. 508, 511 (S.D.N.Y. 1992) ("statements by witnesses may be devoid of any indication of the attorney's thoughts, and in that sense may be purely factual material, and yet they are treated as work-product, and thus not discoverable").

Indeed, Judge Proctor in the Northern District of Alabama denied portions of a similar motion to compel in *Balcero*. *See Balcero* Doc. No. 332, at 2-4, attached as Exhibit 3. Drummond's request for such documents is an attempt to circumvent another Court's resolution of discovery disputes. *Cf. Melder v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 1899569, at *2 (N.D. Ga. Apr. 25, 2008) (Defendant had "standing to challenge the [third-party] subpoenas because among other reasons, Plaintiffs have sought the same information directly from [Defendant] in the forum court where a contested discovery dispute over disclosure of the documents sought in the subpoenas has been going on for some time"). Thus, "permitting the production of the documents from third-parties without allowing Defendants the opportunity to bring a motion to quash would effectively moot the discovery dispute between the parties in the forum court." *Id.*

6

For all these reasons, Defendants have standing to bring the present motion and the Court should grant Defendants' request for a protective order or, alternatively, to quash the subpoena directed to Parker Waichman, LLP in order to prevent the disclosure of documents protected by the attorney-client privilege and attorney work product.

### C.   The Subpoena Should Be Quashed Because it Seeks the Same Documents as Those Requested from the Defendants and the Information Drummond Seeks Should Be Requested from a Party.

Defendants also seek a protective order or, in the alternative, for the subpoena to be quashed in order to prevent Drummond from seeking discovery from Parker Waichman, LLP, which it can and has obtained directly from Defendants.  *See* Fed. R. Civ. P. 26(c) (in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" courts may "forbid[] the disclosure or discovery," or "prescrib[e] a discovery method other than the one selected by the party seeking discovery."); *see also* Fed. R. Civ. P. 45(c)(3)(A)(iv) (a subpoena *must* be quashed or modified if it "subjects a person to undue burden.").  "Whether a subpoena imposes an 'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"  *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 03 CIV.1382 RWS, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (quoting *United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)); *see also Snider v. Lugli*, CV 10-4026 JFB AKT, 2011 WL 5401860, at *3 (E.D.N.Y. Nov. 4, 2011) (same).

"However, courts also give special weight to the burden on non-parties of producing documents to parties involved in litigation."  *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (citing *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st

Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to

special weight in evaluating the balance of competing needs.")); *see also Tucker v. Am. Int'l*

*Grp., Inc.*, 281 F.R.D. 85, 92 (D. Conn. 2012) ("the fact that discovery is being sought *from a*

*third or non-party* . . . weighs against permitting discovery."); *id.* ("Within this Circuit, courts

have held nonparty status to be a 'significant' factor in determining whether discovery is unduly

burdensome.") (citing *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y.1988));

*Snider*, 2011 WL 5401860, at *4 ("the Court is cognizant of the special weight courts give to the

burden on nonparties of producing documents for others involved in litigation"); *Noel v. The*

*Bank of New York Mellon*, 11 MC 216, 2011 WL 3279076, at *2 (S.D.N.Y. July 27, 2011)

("Where, as here, discovery is sought from third parties, 'the Court must weigh the probative

value of the information against the burden of production on said non-parties.'") (quoting *In re*

*Biovail Corp. Secs. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007)); *In re Candor Diamond Corp.*, 26

B.R. 847, 849 (Bankr. S.D.N.Y. 1983) ("Restrictions on discovery may be broader where a non-

party is the target of discovery to protect such third parties from unnecessary harassment,

inconvenience, expense or disclosure of confidential information.").

Drummond cannot demonstrate a need for the requested documents because the requests

directed to Parker Waichman, LLP are duplicative. All of the documents requested in the

subpoena have been requested of Defendants by Drummond in the underlying defamation action,

or they were previously requested and produced in *Balcero,* the related human rights litigation.

*See* Exhibit 2 (identifying for each objection which requests the subpoena duplicates); *see also*

Exhibit 4 (Defendants' Amended Response to Plaintiff's First Request for Production); Exhibit 5

(Defendants' Fifth Request for Production in *Balcero v. Drummond*). In the underlying

defamation lawsuit, Defendants objected to the requests and Drummond filed a Motion to

8

Compel that is currently pending before Judge Proctor in the Northern District of Alabama, Southern Division. *See Collingsworth* Doc. 33.[2]  Similarly, in the *Balcero* case, the parties met and conferred regarding the discovery requests, both parties presented unresolved issues to the court for resolution, the court ruled, and discovery has closed. *See Balcero* Doc. 332.  Thus, the discovery now sought from Parker Waichman, LLP is redundant and seeks to circumvent discovery limits in related litigation.

Not only are the requests directed at Parker Waichman, LLP for the *same* documents duplicative, but they are also unduly burdensome.  It is clear that much of the information Drummond seeks concerning payments and communications with witnesses should have been directed, if ever, at Defendants and not at a third-party.  *See, e.g., Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd.*, 02CIV.2605(AGS)(JCF), 2002 WL 31413681, at *1 (S.D.N.Y. Oct. 25, 2002) ("It is certainly true that it is often preferable to take party discovery before burdening third-parties, especially where there is a danger that the threat of inconveniencing third-parties who have a business relationship with a litigant will be used as a litigation tactic."); *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996) ("'[i]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].'") (quoting 8A Wright, *Miller & Marcus, Federal Practice and Procedure* § 2204 (1994)) (alterations in original).

Here, the information not only *could* be obtained by another source previously during discovery, all responsive, non-privileged requested documents *already have been* produced to Drummond by Defendants in this defamation suit and in the *Balcero* litigation.  The burden of production on a third-party obviously outweighs the benefit of re-producing documents that have

---

[2] All case docket entries are referenced by the abbreviated case name and "Doc. ___."

already been produced. *See, e.g., Tucker*, 281 F.R.D. at 96 (denying motion to compel third-party production "[b]ecause plaintiff has engaged in extensive, alternative, duplicative, and likely less burdensome, discovery with respect to defendants"); *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) (quashing subpoena issued by plaintiff to third-party because it was "duplicative of [Plaintiff's] document requests"); *Cohen v. City of New York*, 255 F.R.D. 110, 122 (S.D.N.Y. 2008) (modifying subpoena to exclude duplicative production); *Burns v. Bank of Am.*, 03 CIV.1685 RMB JCF, 2007 WL 1589437, at *3 (S.D.N.Y. June 4, 2007) (the scope of "discovery is not boundless, and a court may place limits on discovery demands that are 'unreasonably cumulative or duplicative'") (quoting Fed. R. Civ. P. 26(b)(2)(C)).

Finally, even *if* some documents were previously sought from Defendants and they refused to produce them, subpoenaing a third-party to obtain the documents is not permissible. *See, e.g., Minibooster Hydraulics A/S v. Scanwill Fluid Power Aps*, 2007 WL 1526421, at *3 (W.D.N.Y. May 23, 2007) (quashing third-party subpoena "as overly broad and unduly burdensome" where plaintiff's counsel was representing the third-party's interests and the third-party's "documents [we]re in plaintiffs' control," because "[i]f defendants seek specific [third-party] documents not covered by their previous discovery requests, such additional requests should be directed to plaintiff pursuant to Fed. R. Civ. P. 34."); *Joiner v. Choicepoint Services, Inc.*, 2006 WL 2669370, at *5 (W.D.N.C. Sep 15, 2006) (where "[a] number of the documents requested in Plaintiff's subpoenas *duces tecum* at issue encompass documents Plaintiffs originally asked for in its document production request of Defendant pursuant to Rule 34 . . . the proper method for plaintiff to obtain these documents would be a motion to compel.").

**D.**     **The Subpoenas Should Be Quashed Because the Requests are Overly Broad and Drummond is on a Fishing Expedition for Information that Is Not Relevant or Likely to Lead to the Discovery of Admissible Evidence.**

Defendants' motion for a protective order or, alternatively, to quash the subpoena should also be granted because, in addition to being duplicative of requests for documents served on Defendants, none of the documents requested of Parker Waichman, LLP are relevant to the claims or defenses in this case, nor are they likely to lead to the discovery of admissible evidence. *See, e.g., Crosby v. City of New York,* 269 F.R.D. 267, 282 (S.D.N.Y. 2010) ("Where a party has subpoenaed a non-party, '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'") (quoting *Kingsway Fin. Serv., Inc. v. Pricewaterhouse-Coopers LLP*, 03 CIV. 5560(RMB) HBP, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008)) (alteration in original); *Ireh v. Nassau Univ. Med. Ctr.*, CV06-09 LDW/AKT, 2008 WL 4283344, at *5 (E.D.N.Y. Sept. 17, 2008) ("subpoena that is issued to non-parties pursuant to Rule 45 is 'subject to Rule 26(b)(1)'s overriding relevance requirement.'") (quoting *During v. City Univ. of N.Y.,* No. 05 Civ. 6992, 2006 WL 2192843, at *2 (S.D.N.Y. Aug. 1, 2006)); *Ungar,* 400 F. Supp. 2d at 553 (quashing third-party subpoena, in part, because of "the unlikelihood of obtaining relevant information"); *Night Hawk*, 2003 WL 23018833, at *8 (granting motion to quash where party could "not establish that the relevance of the Subpoena outweighs the burden it imposes on non-party").

The elements of libel that Drummond must prove to succeed in the present defamation action are:  (1) a publication which requires a communication with someone other than the plaintiff; (2) the publication must be defamatory which means a false statement understood by some third party is natural and probably injurious to the plaintiff's reputation; (3) the statement

11

must have sufficient specificity for the person to whom publication is made to know it relates to the plaintiff; and (4) it must have been intentional or have occurred in such circumstances that the defendant would have anticipated its occurrence. *United States Steel, LLC v. Tieco, Inc.* 261 F. 3d 1275, 1293 n.22 (11th Cir. 2001). In the instant case, the allegedly defamatory publications at issue are three letters sent by Defendant Collingsworth in 2011. *See* Exhibit 6 (Complaint ¶ 22).

Here, none of the documents requested of Parker Waichman, LLP have any bearing on the elements of Drummond's libel case and the requests at issue, specifically identified below, are overly broad and exceed any reasonable temporal scope for discovery. First, Drummond has contended that Defendant Collingsworth's knowledge, motivation, or belief is at issue in the libel action, *see Collingsworth* Doc. 43, at 1-3, but Parker Waichman, LLP cannot possibly have documents relevant to Mr. Collingsworth's state of mind. Moreover, any non-privileged, non-work-product from Mr. Collingsworth could be (and should) be sought from him as a party to the litigation.

Second, Drummond's requests use all-encompassing phrases that make the subpoena facially over-broad. *See* Exhibit 1 (Drummond Subpoena to Parker Waichman, LLP, Requests 1-10 (seeking for each request "any and all documents related or referring to" a given subject); *see also, e.g., Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996) (subpoena imposed "undue burden" on third-party and needed to be "quashed or modified" because it was "overly broad on its face" where requests "utterly fail[ed] to describe the documents sought with *any* particularity."); *W. Res., Inc. v. Union Pac. R.R. Co.*, 2002 WL 1822432, at *3 (D. Kan. July 23, 2002) ("requests are overly broad on their face to the extent they utilize all-encompassing phrases such as 'relate to' or 'relating to.'").

Third, the requests exceed any reasonable temporal scope.  Whether a subpoena imposes

an undue burden is determined, in part, by "the time period covered by it."  *See, e.g., Snider*,

2011 WL 5401860, at *3.  "A demand for documents should cover a reasonable time period to

insure that the materials desired are sufficiently identified and to confine the search to relevant

documents."  *Int'l Bus. Machines*, 83 F.R.D. at 107.  In this case, the letters that are the subject

of the libel suit were written in 2011.  Drummond's requests going back to 2003 – eight years

before the letters were written – are unreasonable.  *See, e.g, Barrera v. Boughton*, 3:07CV1436

RNC, 2010 WL 3926070, at *1 (D. Conn. Sept. 30, 2010) (finding "temporal scope of the

request, which seeks responsive documents from December 2001 to the present [nine years], is

overly broad."); *Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 152 (E.D.N.Y. 2009) (limiting

requests "to documents for the time period covering the events alleged in this action").  *Cf.*

*Bridgeport Music Inc. v. UMG Recordings, Inc.*, 05CIV.6430(VM)(JCF), 2007 WL 4410405, at

*3 (S.D.N.Y. Dec. 17, 2007) (distinguishing a case in which a third-party subpoena "asked for a

'sweeping search' with no time limitations" because the subpoena at issue "is limited in scope,

and no similar discovery request have been previously made") (quoting *Linder v. Calero-*

*Portocarrero*, 180 F.R.D. 168, 174 (D.D.C. 1998)); *Calabro v. Stone*, 224 F.R.D. 532, 533-34

(E.D.N.Y. 2004) (non-party subpoena requesting production from date of underlying accident to

present were not overly broad in temporal scope).

Fourth, Drummond's requests seek irrelevant information that is unlikely to lead to

admissible evidence and amount to nothing more than an abusive fishing expedition.  *See, e.g.,*

*Jackson v. AFSCME Local 196*, 246 F.R.D. 410, 413 (D. Conn. 2007) (agreeing "that, 'when

non-parties are forced to pay the costs of discovery, the requesting party has no incentive to deter

it from engaging in fishing expeditions for marginally relevant material.'") (quoting *Linder,* 183

F.R.D. at 322-23).  In particular, use of the subpoena power in an attempt to uncover possible

wrongful conduct or to gain information for use in an ancillary proceeding is prohibited.  *See,*

*e.g., Segal v. Gordon,* 467 F.2d at 607–09; *Segan v. Dreyfus Corp.,* 513 F.2d 695, 696 (2d Cir.

1975) (discovery constituting "an apparent effort to uncover other fraudulent transactions"

properly denied as a "fishing expedition of large proportions" where facts alleged in complaint

did not support it); *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 02 CIV. 3400 (WCC), 2005

WL 6457182, at *3 (S.D.N.Y. Sept. 21, 2005) ("Plaintiffs will not be permitted to use discovery

as a fishing expedition in hopes of establishing a claim against [third-party]"); *Nicholas v.*

*Poughkeepsie Sav. Bank/FSB,* No. 90 Civ. 1607, 1991 WL 113279, at *2 (S.D.N.Y. June 14,

1991) ("[W]hen the purpose of a discovery request is to gather information for use in

proceedings other than the pending suit, discovery is properly denied.") (quoting *Oppenheimer*

*Fund, Inc. v. Sanders,* 437 U.S. 340, 353 n. 17 (1978)).

For all these reasons, the following requests should be quashed.

**1.      Requests 1-8: Documents Related to Payments**

Requests 1-8 seek information about "any form of assistance" to any individual or any

family members of an individual "incarcerated in Colombia" and any individual or family

members of an individual with "any connection to Colombian paramilitaries."  *See* Exhibit 1.

These requests are overly broad, and are not limited to witnesses or potential witnesses in

Defendants' litigation against Drummond.  Moreover, the requests remain irrelevant to

Drummond's libel claim.  Finally, these requests are duplicative and more appropriately directed

to Defendants.  *See* Exhibit 2 (Defendants' Objections to Parker Waichman, LLP Subpoena

(identifying the duplication for each request); *see also* Section III.C. *supra.*  Indeed, Defendants

have already produced all responsive, non-privileged documents regarding security provided to

14

Drummond witnesses in the *Balcero* litigation. These documents were produced through June 2012, nearly a year after the letters at issue were sent.

### 2.    Requests 9-10: Documents Related to Witness Testimony

As discussed above, Requests 9 and 10, which seek any and all documents relating to the "anticipated testimony" or "actual testimony" of "individuals incarcerated in Colombia" are overly broad and necessarily include documents protected by attorney-client privilege and the work-product doctrine. *See supra* Section III.B. Furthermore, these requests are duplicative and more appropriately directed at the Defendants. *See supra* Section III.C.

### E.    The Court Should Impose Sanctions Against Drummond for Misuse of Its Subpoena Power.

On July 17, 2013 and July 19, 2013, Drummond noticed Defendants that they intended to serve a number of subpoenas seeking identical information from several organizations and individuals, including Parker Waichman, LLP, who have worked with Mr. Collingsworth in human rights litigation against Drummond. Defendants have already responded to substantially the same requests twice, both in the *Balcero* litigation and in the underlying defamation action. Requesting this same information for the third time, now from Parker Waichman, LLP, a third-party to the litigation, is an abuse of the subpoena power. Moreover, Drummond has subpoenaed a number of Mr. Collingsworth's current and former employees, and co-counsel, despite the fact that he has never taken the position that Defendants would not search the emails and files of these individuals. *Collingsworth* Decl. ¶¶ 6-11. Sanctions are warranted for this blatant attempt to harass Defendant Collingsworth and his former co-counsel.

Rule 45(c)(1) provides for sanctions when a party has failed to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). The court "***must*** enforce this duty and impose an appropriate sanction . . . on a party or

attorney who fails to comply." *Id.* (emphasis added).  The sanctions provision of Rule 45 was intended primarily to protect "a *non-party* witness as a result of a misuse of the subpoena."  Fed. R. Civ. P. 45(c)(1) advisory committee's note (1991); *see also id.* ("a non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court."); *Molefi v. Oppenheimer Trust*, 03 CV 5631 FBVVP, 2007 WL 538547, at *2 (E.D.N.Y. Feb. 15, 2007) (awarding sanctions because the non-party subpoena had to be quashed because it was burdensome and had no proper purpose).

Defendants' counsel met and conferred with Drummond and addressed each of the issues in this motion.  *See* Exhibit A attached to the declaration of Bradley J. Smith.  Despite this, Drummond refused to withdraw the subpoena, which necessitated filing this motion to quash.  As a result, all of Defendants' counsels' efforts in responding to these subpoenas constitutes an undue burden or expense and should be compensated.  *See, e.g. Night Hawk*, 2003 WL 23018833, at *9 ("Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to institute a motion to quash."); *American Int'l Life Assurance Co. v. Vasquez,* No. 02 Civ. 141, 2003 WL 548736, at *2–3 (S.D.N.Y. Feb. 25, 2003) (imposing sanctions and awarding attorney's fees incurred in bringing motion to quash after attorney issuing subpoena refused to comply with non-party's request to voluntarily withdraw subpoena that sought privileged information); *Builders Ass'n of Greater Chicago*, 96 C 1122, 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002) ("'When a subpoena should not have been issued, literally everything done in response to it constitutes "undue burden or expense" within the meaning of Civil Rule 45(c)(1).'") (quoting *In re Shubov*, 253 B.R. 540, 547 (B.A.P. 9th Cir. 2000)).  Mr. Collingsworth and his staff keep accurate time records and could submit to the Court a precise

16

accounting of time and other expenditures associated with addressing Drummond's improper and abusive use of its subpoena power.  Collingsworth Decl. ¶ 21.

## IV.    CONCLUSION

For all these reasons, Defendants' Motion for Protective Order or, in the alternative, Motion to Quash should be granted and the subpoena quashed in its entirety.  Sanctions should be awarded based on Drummond's blatant disregard for its duties and responsibilities concerning its subpoena power with regard to third-parties.

Dated: August 23, 2013                    Respectfully submitted,

Thomas M. Mullaney (TM 4274)
The Law Office of Thomas M. Mullaney
489 Fifth Avenue, Suite 1900
New York, New York 10017
212-223-0800 (Tel.)
212-661-9860 (Fax)
tmm@mullaw.org

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC. | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | (Case No. 2:11-CV-3695-RDP pending in |
| | ) | the Northern District of Alabama, Southern |
| v. | ) | Division) |
| | ) | |
| TERRENCE P. COLLINGSWORTH, | ) | **DECLARATION OF BRADLEY J.** |
| individually and as an agent of Conrad & | ) | **SMITH IN SUPPORT OF** |
| Scherer, LLP; and CONRAD & SCHERER, | ) | **DEFENDANTS' MOTION FOR** |
| LLP, | ) | **PROTECTIVE ORDER AND/OR** |
| | ) | **MOTION TO QUASH SUBPOENA TO** |
| Defendants. | ) | **PARKER WAICHMAN, LLP** |
| | ) | |

I, Bradley J. Smith, hereby declare as follows:

1. I am a partner in the law firm of Clark, Hair, & Smith, P.C. and an attorney for
Defendants Terrence P. Collingsworth, and Conrad & Scherer, LLP in a libel action
pending in the Northern District of Alabama, *Drummond Company, Inc. v. Terrence P.
Collingsworth, et al.*, Case No. 2:11-CV-3695-RDP (N.D. Ala.). I submit this declaration
in support of Defendants' Motion to Quash Subpoenas, or, in the alternative, Motion for
Protective Order. I provide his declaration based on my personal knowledge.

2. On August 1, 2013, I met and conferred telephonically with Plaintiff's Counsel on the
subpoena directed to the law firm Parker Waichman. I contended that the subpoenas seek
information that is protected by the attorney-client privilege and attorney work product.
Additionally, the subpoenas are duplicative, as they seek documents and information
already sought from Defendants in the libel action or in the *Balcero* litigation, and they
are overly broad in scope and not relevant to the claims or defenses in the libel action.
Additionally, they are burdensome, as they seek documents for a span of approximately

10 years.  Plaintiff's counsel stated it was their position the information sought was not privileged and they have refused to correct the outstanding infirmities identified in the accompanying motion to quash.

3.  Attached as Exhibit A is a true and correct copy of the discovery letter I sent to Drummond's counsel on August 2, 2013 addressing the issues raised in the accompanying motion to quash.

I hereby declare under penalty of perjury of the laws of the Unites States of America and the State of Alabama that the statement above is true and correct.

Executed this 20th day of August, 2013 in Birmingham, Alabama.

Bradley J. Smith

# Clark, Hair & Smith, P.C.

### Attorneys at Law

John W. Clark, Jr.
Barry W. Hair
Bradley J. Smith
Eric D. Bonner *
Cynthia Norman Williams

1000 Urban Center Drive, Suite 125
Birmingham, Alabama 35242
(205) 397-2900
(205) 397-2901 Fax

* Also member of Mississippi Bar

www.chslaw.com

bsmith@chslaw.com

August 2, 2013

H. Thomas Wells, III
Starnes, Davis, Florie, LLP
P.O. Box 59812
Birmingham, Alabama 35259

      Re:    Drummond v. Terrence Collingsworth, et al
              CV-2011-AR-3695-S

Dear Trey:

      As I advised during our meet and confer telephone conference on August 1, 2013, we have numerous objections to your Notice of Intent to serve subpoenas on non parties International Rights Advocates, Parker Wakman, LLP, International Labor Rights Forum, Daniel Kovalik, Francisco Ramirez Cuellar, Rebecca L. Pendleton, Loraine M. Leete, Charity Ryerson and Susanna Tellez Martinez. We request you withdraw the subpoenas

      As an initial matter, the subpoenas were improperly issued from various United States District Courts for production in the Northern District of Alabama, Southern Division. Specifically, the subpoenas were issued for production as follows:

      1.    The International Rights Advocates ("IRA") subpoena was issued by United States District Court for the District of Colombia for production at the Starnes, Davis, Florie office in Birmingham.

      2.    The Parker Waichman subpoena was issued by the United States District Court for the Southern District in New York for production at the Starnes, Davis, Florie office in Birmingham.

3.      The International Labor Rights Forum subpoena was issued by the United States District Court for the District of Columbia for production at the Starnes, Davis, Florie office in Birmingham.

4.      The Daniel Kovalik subpoena was issued by the United States District Court for the Western District of Pennsylvania for production at the Starnes, Davis, Florie office in Birmingham.

5.      The Francisco Ramirez Cuellar subpoena was issued by the United States District Court for the Eastern District of New York.

6.      The Rebecca L. Pendleton subpoena was issued by the United States District Court for the Eastern District of New York for production at the Starnes, Davis, Florie office in Birmingham.

7.      Loraine M. Leete subpoena was issued by the United States District Court for the District of Minnesota for production at the Starnes, Davis, Florie office in Birmingham.

8.      The Charity Ryerson subpoena was issued by the United States District Court for the District of Colombia for production at the Starnes, Davis, Florie office in Birmingham.

9.      The Susanna Tellez Martinez subpoena was issued by the United States District Court for the District of Columbia for production at the Starnes, Davis, Florie office in Birmingham.

The subpoenas were improperly issued.  A subpoena must be issued for "production or inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made."  Fed. R. Civ. P. 45(a)(2)(C). These subpoenas were issued from United States District Courts other than Alabama but command that documents be produced at the law office of Starnes, Davis, Florie, LLP in Birmingham.  As a result, the District Courts that issued the subpoenas did not have jurisdiction and as a result the subpoenas are void.

In addition to the fact the subpoenas were improperly issued, we have additional objections to the subpoenas.  First, the subpoenas are duplicative to numerous other requests propounded by Drummond in the various other human rights cases as well as the current case. Second, the subpoenas seek documents protected by the attorney client privilege and/or work product doctrine.  Third, the subpoenas are overly broad, irrelative and not reasonably calculated to lead to the discovery of admissible evidence.

As you are aware, Mr. Collingsworth is the Executive Director and General Counsel for IRA.  He currently serves as the General Counsel of the IRLF.  Parker Waichman appeared as co-counsel in the *Balcero* litigation.  Daniel Kovalik was co-counsel during the Drummond I litigation.  Francisco Ramirez Cuellar is a Colombian attorney who serves as local counsel in the *Balcero* litigation.  Rebecca Pendleton is a paralegal that worked for IRLF and Conrad &

Scherer. Loraine Leete is an attorney based in Colombia with Collingsworth in the *Drummond* litigation. Charity Ryerson is an associate with Conrad & Scherer working on the *Drummond* litigation. Susana Tellez Martinez is a Colombian based paralegal for Conrad & Scherer. All of the individuals are either co-counsel in litigation against Drummond or actual employees of Conrad & Scherer. The documents sought are confidential and privilege.

All of the document requests contained in the subpoenas have either already been served on Mr. Collingsworth in his capacity as counsel in the *Balcero* case or as a Defendant in the underlying libel case in which he is a party. This subpoena is duplicative of requests already made to Mr. Collingsworth, as a defendant in the libel action, and/or duplicative of requests that should have been directed to either the Defendants in the libel action or to Plaintiffs in the *Balcero* action. Given the duplicative nature of the requests, they are designed to harass Mr. Collingsworth who has already responded to identical or similar requests.

These Requests are so broad as to request information and documents that are protected by attorney-client privilege and attorney work product, such as attorney notes, internal communications, and legal memoranda, all prepared in the course of and in anticipation of litigation.

In addition, the scope of the subpoenas are not properly limited in time and scope. For example, the subpoena requests seek documents from 2003 through the present. However, the alleged defamation statements were not made until 2011. As a result the requests are overly broad and intentionally burdensome.

Document Request 1-9, for the IRA, Parker Waichman and IRLF subpoenas, and Request 11-18 for the Kovalik, Cuellar, Pendleton, Leete, Ryerson and Tellez Martinez subpoenas seek "any and all documents" related to the payment of witnesses. The witnesses identified include:

    a.  Jaime Blanco Maya
    b.  Jairo Jesus Charris Castro
    c.  Edgar Ariel Cordoba Trujillo
    d.  Libardo Duarte
    e.  Jhon Jairo Esquivel Cuadrado
    f.  Hernan de JesusFontalvoSanchez
    g.  Jose GelvezAlbarracin
    h.  Alcides Manuel Mattos Tabares
    i.  Javier Ernesto Ochoa Quinonez
    j.  Jose Aristides Peinado Martinez
    k.  Oscar David Perez Bertel
    l.  "Halcon"

Defendants object to these request because the documents related to any payments, is not relevant to the claims or defenses in the above-captioned libel action, nor is the request reasonably calculated to lead to admissible evidence. Moreover, Halcon is not a witness in the *Balcero* litigation, he did not provide any testimony for the Plaintiffs in *Balcero*, and his complete lack of involvement in the case makes facts relating to him irrelevant to this libel

action. Additionally, Plaintiff sought the same documents from Defendants in related litigation, which makes this request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.,* Defendants' Fifth Request for Production in *Balcero,* Request Nos. 12 and 16. Defendants further object that these request are overly broad in that they seek "any and all" documents. Additionally, Defendants objects because the Request seek documents that are protected by the attorney-client privilege and attorney work-product doctrine, because the request seek "all documents related or referring to . . ." the individuals identified to the extent they encompasses attorney notes, research, and internal communications, which are not discoverable. Finally, non-privileged, non work-product protected documents sought by this request have already been produced by Defendants in either the *Balcero* litigation, through the close of discovery, or the above-captioned libel case, which is pending in the Northern District of Alabama.

Request 9 and 10 for the IRA, Parker Waichman and IRLF subpoenas and Request 17 and 18 to the Kovalik, Cuellar, Pendleton, Leete, Ryerson and Tellez Martinez subpoenas seek documents related to the testimony of the previous listed individuals. Similar to the previous request, Defendants object because this the request, which seeks documents related to "any and all" documents "referring" to anticipated testimony, is not relevant to the claims or defenses in the above-captioned libel action, nor is the request reasonably calculated to lead to admissible evidence. Moreover, Halcon is not a witness in the *Balcero* litigation, he did not provide any testimony for the Plaintiffs in *Balcero,* and his complete lack of involvement in the case makes facts relating to him irrelevant in this libel action. Defendant further objects because this request is overly broad as it seeks "any and all" documents. Additionally, Plaintiff sought the same documents from Defendants in related litigation, which makes this request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.,* (Defendants' Fifth Request for Production in *Balcero,* Request Nos. 11, 12, 14, 18 and 19). Additionally, this Request blatantly seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine seeks to track investigations, including attorney notes, research, and internal communications, which are not discoverable.  Non-privileged, non work-product protected documents concerning these individuals were previously produced after, in part, a discovery dispute was resolved by the Court in *Balcero.* Plaintiff's request for such documents is an attempt to circumvent another Court's resolution of discovery disputes.

Request 11 for the IRA and IRLF subpoenas and Request 19 for the Kovalik, Cuellar, Pendleton, Leete, Ryerson and Tellez Martinez subpoenas seek "any and all telephone or Skype records between any employee of IRA and any of the individuals" identified in Requests Nos. 1-8, or any individual incarcerated in Colombia. Defendants object because this request seeks documents that are not relevant to the claims or defenses in the above-captioned libel action. Additionally, this request is vague and ambiguous as to "telephone or skype records." To the extent this request seeks the content of any Skype or telephone communications, this information is protected by attorney-client privilege and is attorney work-product, as it seeks to track Mr. Collingsworth's investigations, including conversations with witnesses in the course of preparing the *Balcero* case for litigation, which are not discoverable.

Request 12 through 18 of the IRA and IRLF subpoenas and Request 20 through 27 of the Kovalik, Cuellar, Pendleton, Leete, Ryerson and Tellez Martinez subpoenas seek "[a]ny and all

communications with, or documents related to or referring to" Jose Pinzon Diaquiz, Katerin Durango Avendano., Carlos Taro, Gonzalo Guillen, Lisseth Andrea Ballsteros Pinzon, halcon85@yahoo.com, Luis Leon, and Leydi Johana Perez Valencia. Defendants object because this request seeks documents that are not relevant to the claims or defenses in the above-captioned libel action. Specifically, Defendant, Mr. Collingsworth, previously identified Jose Pinzon Diaquiz as a contact for an individual, Halcon, who is not a witness in the *Balcero* litigation, and did not provide any testimony for the Plaintiffs in *Balcero*. His complete lack of involvement in the case makes facts relating to a contact for him irrelevant in this libel action. This Request is overly broad, as it seeks "any and all communications with . . . Jose Pinzon Diaquiz." Additionally, Plaintiff sought the same documents from Defendants in this libel case, which makes this request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.,* Plaintiff's Second Request for Production, Request No. 7. To the extent this request seeks documents "referring to" the identified individuals, the Request impermissibly seeks documents protected by the attorney-client privilege and is attorney work-product, such as attorney notes or internal communications. Finally, non-privileged, non work-product protected documents sought by this request have already been produced by Defendants in either the *Balcero* case, through the close of discovery, or in the above-captioned libel case, which is pending in the Northern District of Alabama.

Request 20-23 of the IRA and IRLF subpoenas and Request 28-31 of the Kovalik, Cuellar, Pendleton, Leete, Ryerson and Tellez Martinez seeks documents relating to payments between Conrad & Scherer, Terry Collingsworth or any employee of Conrad & Scherer and the IRA. Defendants objects because documents showing payments by Conrad & Scherer, Terry Collingsworth or any employee of Conrad & Scherer to IRA are not relevant to the claims or defenses in the above-captioned libel action, nor is this request reasonably calculated to lead to admissible evidence. Additionally, this Request is duplicative of information already sought from Defendants and is unduly burdensome. *See, e.g.,* Plaintiff's First Request for Production, Request No. 65. Additionally, this request is overly broad, as it requests "any and all documents."

Request 24 of the IRA and IRLF subpoenas and Request 32 of the Kovalik, Cuellar, Pendleton, Leete, Ryerson and Tellez Martinez subpoenas seeks "[a]ny and all documents related to or referring to the sale by Drummond Ltd. of a portion of its Colombian operations" and Request 25 of the IRA and IRLF subpoenas and Request 33 of Kovalik, Cuellar, Pendleton, Leete, Ryerson and Tellez Martinez subpoenas seek "[a]ny and all documents showing the names of any IRA employees, agents or consultants who are investigating any facts related to Drummond Company or any of its employees, officers or operations." Defendants object to this request because it is overly broad as it seeks "any and all documents related to or referring to the sale by Drummond Ltd. of a portion of its Colombian operations." Additionally, this Request seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine because it asks for "any and all documents," which encompasses attorney notes, research, and internal communications that are not discoverable. Defendants object because this Request is overly broad as it seeks "any and all documents showing the names of employees, among others, which would necessarily divulge information that is protected by the attorney work-product doctrine and attorney-client privilege. This request additionally encompasses

attorney notes, research, and internal communications that are not discoverable because they constitute attorney work product or are protected by attorney-client privilege.

Request 27 and 28 of the IRA and IRLF subpoenas and Request 34 and 35 of the Kovalik, Cuellar, Ryerson, and Tellez Martinez subpoenas seek "[a]ny and all documents showing the current address of Rebecca Pendleton" and "Lorraine Leete." Defendant objects because this request seeks documents that are not relevant to the claims or defenses in the above-captioned libel action, nor is this Request reasonably calculated to lead to admissible evidence. Additionally, this Request is overly broad as it seeks "any and all documents," showing the current address.

Request 28 and 29 IRA and IRLF subpoenas and Request 36 and 37 of the Kovalik, Cuellar, Pendleton, Ryerson, Leete and Tellez Martinez subpoenas seek documents "[a]ny and all documents related or referring" to financing of the Drummond litigation. Defendants objects because this request seeks documents that are not relevant to the claims or defenses in the above-captioned libel action, nor is this Request reasonably calculated to lead to admissible evidence. Additionally, this Request is duplicative of information already sought from Defendants and is unduly burdensome. *See, e.g.,* (Plaintiff's First Request for Production, Request No. 65). Additionally, this request is overly broad, as it requests "any and all documents." Finally, Defendants further object that this request is overly broad because documents related or referring to financing of litigation encompasses information that is protected by the attorney-client privilege and attorney work-product doctrine as it involves internal attorney communications about financial institutions providing lines of credit.

Request 30 IRA and IRLF subpoenas and Request 38 of the Kovalik, Cuellar, Pendleton, Ryerson, Leete and Tellez Martinez subpoenas seeks "[a]ny and all documents related or referring to Llanos Oil or any of its principals, representatives, agents or employees." Defendants object to this request because this request seeks documents that are not relevant to the claims or defenses in the above-captioned libel action, nor is the Request reasonably calculated to lead to admissible evidence. Additionally, this Request is duplicative of information already sought from Defendants and is unduly burdensome. *See, e.g.,* (Plaintiff's First Request for Production Nos. 41, 43, 44, 45, 47, 54, 55, 56, 62, 63). Additionally, this request is overly broad, as it requests "any and all documents." Defendants object that this request is overly broad because it seeks documents protected by the attorney-client privilege and work-product doctrine, as Mr. Collingsworth represented Mr. Albert van Bilderbeek concerning claims against Drummond, and thus this request for all documents referring to Llanos Oil and any of its principals, representatives, agents or employees encompasses privileged information and attorney work product. Non-privileged, non work-product protected documents sought by this request have already been produced by Defendant in either the *Balcero* litigation, or in the above-captioned libel case, which is pending in the Northern District of Alabama.

Finally, Request 1-6 of the Kovalik, Cuellar, Pendleton, Leete, Ryerson and Tellez Martinez subpoenas seek documents related to payments in the *Giraldo, Balcero, and Melo* cases. Defendants object to this request because they are not relevant to the libel action. In addition, Plaintiff sought the same documents from Defendants in related litigation, which makes the request duplicative of information previously sought and therefore burdensome. Defendants

further state that the request are overly broad to the extent they seek "any and all" documents. Also, because the requests seek "all documents related or referring to…" possibly encompasses attorney notes, research, and internet communications, which are not discoverable.

Thanks for your attention to this matter.  Please contact me with any questions.

Sincerely,

*Brad*/and

Bradley J. Smith

BJS/and

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DRUMMOND COMPANY, INC. | ) Civil Action No. _____ |
| | ) |
| Plaintiff, | ) (Case No. 2:11-CV-3695-RDP pending in |
| | ) the Northern District of Alabama, Southern |
| v. | ) Division) |
| | ) |
| TERRENCE P. COLLINGSWORTH, | ) **DECLARATION OF TERRENCE P.** |
| individually and as an agent of Conrad & | ) **COLLINGSWORTH IN SUPPORT OF** |
| Scherer, LLP; and CONRAD & SCHERER, | ) **DEFENDANTS' MOTION FOR** |
| LLP, | ) **PROTECTIVE ORDER AND/OR** |
| | ) **MOTION TO QUASH SUBPOENA TO** |
| Defendants. | ) **PARKER WAICHMAN, LLP** |
| | ) |

I, Terrence P. Collingsworth, declare under penalty of perjury of the laws of the United States of America, that:

1. I am a partner in Conrad & Scherer, LLP and lead counsel for the Plaintiffs in *Balcero v. Drummond Company, Inc.*, No. 2:09-cv-1041-RDP (N.D. Ala.). I am also a Defendant in *Drummond Company, Inc. v. Terrence P. Collingsworth, et al.*, No. 2:11-cv-3695-RDP (N.D. Ala.). I provide this declaration based on my personal knowledge and can testify under oath to all of the facts herein.

2. I am currently the Executive Director and General Counsel for International Rights Advocates ("IRAdvocates"), a Washington, D.C.-based non-profit corporation. I have held this position since 2007 when I founded the organization. In 2007, as the General Counsel for IRAdvocates, I continued to litigate the first human rights case against Drummond Company, *Romero, et al. v. Drummond Company, Inc., et al.*, No. 7:03-cv-00575-KOB (N.D. Ala.) ("*Drummond I*"), which I had previously filed in 2002 when I was General Counsel for the International Labor Rights Forum (ILRF). After this, in

2008, I, along with all of my staff at IRAdvocates, joined the law firm of Conrad & Scherer as a partner and began litigating all of our human rights cases, including the various Drummond cases, with the firm.

3. As noted above, from 1989 until 2007, I was General Counsel of the ILRF. In 2007, the litigation department of the ILRF separately incorporated and formed IRAdvocates. While at ILRF, I initiated the *Drummond I* litigation in 2002, and then when IRAdvocates formed, I transferred all the litigation files, including those of *Drummond I*, to the new organization. The ILRF has absolutely no documents at all relating to any of the Drummond litigation.

4. The law firm of Parker Waichman is my co-counsel in several cases. From October 5, 2010 to February 23, 2012, Parker Waichman appeared as co-counsel in the *Balcero* litigation. After February 23, 2012, Parker Waichman had no involvement with the case. Any document that Parker Waichman has or had in its custody, possession or control was provided to them by me or my staff or I have the identical documents in my custody, possession or control.

5. I have reviewed the subpoenas Drummond has caused to be issued to IRAdvocates, ILRF, and Parker Waichman. They are essentially identical, and the document requests contained in the three subpoenas have either already been served on me in my capacity as counsel in the *Balcero* case or as a Defendant in the underlying libel case. Moreover, in my capacity as Defendant in the libel action and as counsel in the *Balcero* litigation, I provided all responsive, non-privileged documents in my custody, possession or control, including those in the files of IRAdvocates. The subpoenas to IRAdvocates, ILRF, and Parker Waichman are duplicative of requests already made to me as a defendant in the

2

libel action, and/or duplicative of requests to Plaintiffs in the *Balcero* action. Given the duplicative nature of the requests, they are designed to harass and create an undue burden for IRAdvocates, ILRF, Parker Waichman, and me personally.

6. Daniel Kovalik is Associate General Counsel of the United Steelworkers Union. He was my co-counsel during the entirety of the *Drummond I* litigation, from the filing in 2002, until the appeal concluded in 2008. He has not had any involvement at all in the subsequent *Balcero* litigation. Drummond certainly knows of Mr. Kovalik's participation as co-counsel in the *Drummond I* litigation as he was actively involved and dealt with all members of Drummond's litigation team.

7. Francisco Ramirez Cuellar is a Colombian attorney who serves as my local counsel in the *Balcero* litigation. Drummond is certainly aware of this as he has appeared at numerous times in the litigation, including at the depositions of some of the *Balcero* plaintiffs.

8. Rebecca L. Pendleton was a paralegal who worked for me on the Drummond litigation, both in *Drummond I* and *Balcero*. She began working with me at ILRF, came with me to IRAdvocates, and then joined Conrad & Scherer with me. Drummond is aware of her status as my paralegal as all of the Drummond litigation team has met her at various times in the litigation.

9. Lorraine M. Leete is based in Colombia and is an attorney working for me on the *Balcero* litigation. Ms. Leete is a contract attorney for IRAdvocates and has held this position since September 2010. Drummond is aware of her status as a lawyer working on my litigation team as she was present in the Plaintiffs' depositions and all of the depositions that were taken in Colombia in connection with the *Balcero* litigation.

10. Charity S. Ryerson is a law clerk working with me on the *Balcero* litigation. She is currently employed at Conrad & Scherer and reports directly to me. She has worked on the *Balcero* litigation since 2010, and Drummond is aware that she works in my firm as she has performed various tasks in relation to the *Balcero* case.

11. Susana Tellez Martinez is based in Colombia and is a paralegal employed by Conrad & Scherer. She has been employed with Conrad & Scherer since April 2008. She works directly with me, primarily on the *Balcero* litigation. Drummond is aware of her status as my paralegal as all of the Drummond litigation team has met her at various times in the litigation, and she attended many of the Plaintiffs' depositions and depositions in Colombia.

12. Without waiving any privilege, including work product or attorney-client, I can say that I have had an attorney-client relationship with Hendrik van Bilderbeek and his brother, Albert van Bilderbeek. The nature of the representation is that I agreed to investigate and explore the options for them to bring a case against Drummond based on Drummond's role in the false imprisonment of Hendrik and the theft of the Llanos Oil concession in Colombia.

13. Attached hereto as Exhibit 1 is a true and correct copy of the Drummond subpoena to Parker Waichman.

14. Attached hereto as Exhibit 2 is a true and correct copy of Defendants Terrence P. Collingsworth and Conrad & Scherer, LLP's objections to Drummond's subpoena to Parker Waichman.

15. Attached hereto as Exhibit 3 is a true and correct copy of *Balcero* Doc. No. 332.

4

16. Attached hereto as Exhibit 4 is a true and correct copy of Defendants' Amended Response to Plaintiff's First Request for Production in the Drummond libel litigation.

17. Attached hereto as Exhibit 5 is a true and correct copy of Defendants' Fifth Request for Production in the *Balcero* litigation.

18. Attached hereto as Exhibit 6 is a true and correct copy of the complaint filed by Drummond in the libel litigation in the Northern District of Alabama, *Drummond et al. v. Collingsworth et al.*, Case No. 2:11-CV-3695-RDP.

19. During my work with both Conrad & Scherer and IRAdvocates, I have been involved in human rights litigation against several corporations operating in Colombia, including Coca-Cola, Chiquita Brands International, Dole Food Company, Occidental Petroleum and British Petroleum, PLC. I have also investigated several other companies for new cases we are considering.

20. I have reviewed our responses on behalf of Plaintiffs in the *Balcero* litigation to document requests served on them by Drummond, as well as my responses as a defendant in the libel action brought against me by Drummond, and we have produced all responsive non-privileged documents to Drummond in those cases. I have never taken the position in the course of litigating the *Balcero* case or the libel litigation that documents within IRAdvocates' electronic or hard copy files were not within my possession, custody or control for the purpose of discovery. As Drummond's document requests to IRAdvocates are virtually identical to requests already made to the *Balcero* Plaintiffs and/or to me in the libel case, I can say that any non-privileged documents that are responsive to the requests to IRAdvocates have already been produced.

5

21. All of the staff and attorneys working for IRAdvocates or for Conrad & Scherer on the Drummond-related litigation keep accurate time records and could produce a precise accounting of all time and costs associated with responding to the Drummond subpoenas.

Executed this 19th day of August, 2013 in Washington, D.C.,

Terrence P. Collingsworth

6

# EXHIBIT 1

AO 88B  (Rev. 05/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| Drummond Company, Inc. | ) | |
| *Plaintiff* | ) | Civil Action No.   2:11-cv-3695-RDP |
| v. | ) | |
| Terrence P. Collingsworth, et al. | ) | (If the action is pending in another district, state where |
| *Defendant* | ) | Northern District of Alabama          ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Parker Waichman LLP, 6 Harbor Park Drive, Port Washington, NY 11050

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Schedule A.

| Place: Starnes Davis Florie, LLP 100 Brookwood Place, 7th Floor Birmingham, AL 35209 c/o H. Thomas Wells, III | Date and Time: 8/26/13 |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  7/23/13

CLERK OF COURT

OR

_____          _____
Signature of Clerk or Deputy Clerk                     Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*   Drummond Company, Inc.
_____ , who issues or requests this subpoena, are:

H. Thomas Wells, III, Starnes Davis Florie, LLP, 100 Brookwood Place, 7th Floor, Birmingham, AL 35209, Phone: (205) 868-6083, E-mail: ntw@starneslaw.com

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   2:11-cv-3695-RDP

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

### Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

SCHEDULE A to Federal Subpoena to Parker Waichman, LLP

## Definitions

1.     "DOCUMENT" has the full meaning ascribed to it in Rule 34 of the *Federal Rules of Civil Procedure* and shall include all originals of any nature whatsoever and all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise, including but not limited to all writings in any form, notes, memoranda, manuals, reports, records, correspondence, drawings, graphs, charts, photographs, phone records, data compilations of whatever nature (including those from which information can be obtained or translated if necessary), audio tapes, electronic mail messages, and electronic data (including any exchange of information between computers, all information stored in an electronic form or computer database, and all forms and formats of storage).

2.     "RELATED TO," "RELATING TO," "IN RELATION TO," "REGARDING" and "CONCERNING" means in relation to, related to, consisting of, referring to, reflecting, concerning, discussing, evidencing, commenting on, describing, constituting, supporting, contradicting or having any logical or factual connection with the matter identified, in whole or in part.

## Instructions

1.     These requests are governed by Rules 26 and 45 of the *Federal Rules of Civil Procedure* and any applicable law and Local Rule.

2.     You are requested to produce all DOCUMENTS and things described below at Starnes Davis Florie, LLP, c/o H. Thomas Wells, III, 100 Brookwood Place, 7th Floor, Birmingham, AL 35209, on or before August 26, 2013.

3.     In answering and responding to these document requests, you are requested to produce all DOCUMENTS that are in you possession, custody, or control, or that are in the possession, custody, or control of your principals, agents, employees, attorneys, representatives, insurers, and any other persons or entities, acting on your behalf.

4.     If any of the information or DOCUMENTS supplied in response to these document requests does not come from your records, please specify the source of the DOCUMENTS or information.

5.     If you refuse to produce any requested DOCUMENT under a claim of attorney-client privilege, work product privilege, or any other privilege or protection, it is requested that you submit for each DOCUMENT withheld a written statement that: specifies the privilege or other asserted basis for withholding the DOCUMENT; summarizes the substance of the DOCUMENT; identifies the person or entity who prepared the DOCUMENT and any persons or entities to which the DOCUMENT was sent or disclosed; and specifies the date on which the DOCUMENT was prepared, transmitted, and/or received.

{B1625096}

6.      The time period covered by these document requests runs from January 1, 2009 to the present. This is a continuing request. Any DOCUMENT obtained or located after the date of production that would have been produced had it been available or had its existence been known at that time should be produced immediately.

7.      If an objection is made to any numbered request, or any subpart thereof, state with specificity all grounds for the objection.

8.      All responsive and potentially responsive documents and tangible things should be preserved and maintained pending the outcome of this matter.

<u>Documents Requested</u>

1. Any and all documents related or referring to requests for payment or any form of assistance (whether monetary or nonmonetary in nature) by any individual incarcerated in Colombia or any such individual's agent, including but not limited to

   a.  Jaime Blanco Maya
   b.  Jairo Jesus Charris Castro
   c.  Edgar Ariel Cordoba Trujillo
   d.  Libardo Duarte
   e.  Jhon Jairo Esquivel Cuadrado
   f.  Hernan de Jesus Fontalvo Sanchez
   g.  Jose Gelvez Albarracin
   h.  Alcides Manuel Mattos Tabares
   i.  Javier Ernesto Ochoa Quinonez
   j.  Jose Aristides Peinado Martinez
   k.  Oscar David Perez Bertel
   l.  "Halcon"

2. Any and all documents related or referring to requests for payment or other assistance (whether monetary or nonmonetary in nature) by any family member of any individual incarcerated in Colombia, including but not limited to

   a.  Jaime Blanco Maya
   b.  Jairo Jesus Charris Castro
   c.  Edgar Ariel Cordoba Trujillo
   d.  Libardo Duarte
   e.  Jhon Jairo Esquivel Cuadrado
   f.  Hernan de Jesus Fontalvo Sanchez
   g.  Jose Gelvez Albarracin
   h.  Alcides Manuel Mattos Tabares
   i.  Javier Ernesto Ochoa Quinonez
   j.  Jose Aristides Peinado Martinez
   k.  Oscar David Perez Bertel
   l.  "Halcon"

{B1625096}

3. Any and all documents related or referring to requests for payment or any form of assistance (whether monetary or nonmonetary in nature) by any individual who (1) has any known connection to Colombian paramilitaries or (2) has been accused by the Colombian government of having a connection to Colombian paramilitaries.

4. Any and all documents related or referring to requests for payment or any form of assistance (whether monetary or nonmonetary in nature) by the family member, acquaintance or agent of any individual who (1) has any known connection to Colombian paramilitaries or (2) has been accused by the Colombian government of having a connection to Colombian paramilitaries.

5. Any and all documents related or referring to payments to individuals incarcerated in Colombia, including but not limited to

    a.    Jaime Blanco Maya
    b.    Jairo Jesus Charris Castro
    c.    Edgar Ariel Cordoba Trujillo
    d.    Libardo Duarte
    e.    Jhon Jairo Esquivel Cuadrado
    f.    Hernan de Jesus Fontalvo Sanchez
    g.    Jose Gelvez Albarracin
    h.    Alcides Manuel Mattos Tabares
    i.    Javier Ernesto Ochoa Quinonez
    j.    Jose Aristides Peinado Martinez
    k.    Oscar David Perez Bertel
    l.    "Halcon"

6. Any and all documents related or referring to payments to any family members of an individual incarcerated in Colombia including but not limited to

    a.    Jaime Blanco Maya
    b.    Jairo Jesus Charris Castro
    c.    Edgar Ariel Cordoba Trujillo
    d.    Libardo Duarte
    e.    Jhon Jairo Esquivel Cuadrado
    f.    Hernan de Jesus Fontalvo Sanchez
    g.    Jose Gelvez Albarracin
    h.    Alcides Manuel Mattos Tabares
    i.    Javier Ernesto Ochoa Quinonez
    j.    Jose Aristides Peinado Martinez
    k.    Oscar David Perez Bertel
    l.    "Halcon"

7. Any and all documents related or referring to any form of assistance (whether monetary or nonmonetary in nature) to any individual incarcerated in Colombia, including but not limited to

{B1625096}

     a.   Jaime Blanco Maya
     b.   Jairo Jesus Charris Castro
     c.   Edgar Ariel Cordoba Trujillo
     d.   Libardo Duarte
     e.   Jhon Jairo Esquivel Cuadrado
     f.   Hernan de Jesus Fontalvo Sanchez
     g.   Jose Gelvez Albarracin
     h.   Alcides Manuel Mattos Tabares
     i.   Javier Ernesto Ochoa Quinonez
     j.   Jose Aristides Peinado Martinez
     k.   Oscar David Perez Bertel
     l.   "Halcon"

8. Any and all documents related or referring to any form of assistance (whether monetary or nonmonetary) to any family member of an individual incarcerated in Colombia including but not limited to

     a.   Jaime Blanco Maya
     b.   Jairo Jesus Charris Castro
     c.   Edgar Ariel Cordoba Trujillo
     d.   Libardo Duarte
     e.   Jhon Jairo Esquivel Cuadrado
     f.   Hernan de Jesus Fontalvo Sanchez
     g.   Jose Gelvez Albarracin
     h.   Alcides Manuel Mattos Tabares
     i.   Javier Ernesto Ochoa Quinonez.
     j.   Jose Aristides Peinado Martinez
     k.   Oscar David Perez Bertel
     l.   "Halcon"

9. Any and all documents related or referring to the anticipated testimony of individuals incarcerated in Colombia including but not limited to

     a.   Jaime Blanco Maya
     b.   Jairo Jesus Charris Castro
     c.   Edgar Ariel Cordoba Trujillo
     d.   Libardo Duarte
     e.   Jhon Jairo Esquivel Cuadrado
     f.   Hernan de Jesus Fontalvo Sanchez
     g.   Jose Gelvez Albarracin
     h.   Alcides Manuel Mattos Tabares
     i.   Javier Ernesto Ochoa Quinonez
     j.   Jose Aristides Peinado Martinez
     k.   Oscar David Perez Bertel
     l.   "Halcon"

{B1625096}

10. Any and all documents related or referring to the actual testimony of individuals incarcerated in Colombia including but not limited to

    a.    Jaime Blanco Maya
    b.    Jairo Jesus Charris Castro
    c.    Edgar Ariel Cordoba Trujillo
    d.    Libardo Duarte
    e.    Jhon Jairo Esquivel Cuadrado
    f.    Hernan de Jesus Fontalvo Sanchez
    g.    Jose Gelvez Albarracin
    h.    Alcides Manuel Mattos Tabares
    i.    Javier Ernesto Ochoa Quinonez
    j.    Jose Aristides Peinado Martinez
    k.    Oscar David Perez Bertel
    l.    "Halcon"

11. Any and all documents related or referring to the actual, potential or possible violation of any ethical rules of any jurisdiction, including but not limited to payments to witnesses, in the matter captioned *Claudia Balcero Giraldo, et al. v. Drummond Company, Inc., et al.*, 2:09-cv-1041-RDP (N.D. Ala.), or in the matter captioned *Freddy Locarno Baloco, et al. v. Drummond Company, Inc., et al.*, 7:09-cv-00557-RDP (N.D. Ala.).

{B1625096}

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | (Case No. 2:11-CV-3695-RDP |
| TERRENCE P. COLLINGSWORTH, | ) | pending in the Northern District |
| individually and as an agent of Conrad & Scherer, | ) | of Alabama, Southern Division) |
| LLP; and CONRAD & SCHERER, LLP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' OBJECTIONS TO PLAINTIFF'S SUBPOENA DUCES TECUM TO PARKER WAICHMAN, LLP

### GENERAL OBJECTIONS

1.      Defendants Conrad & Scherer, LLP and Terrence Collingsworth object to this subpoena to third-party Parker Waichman, LLP ("PWA") because the issuing U.S. District Court for the Eastern District of New York lacks jurisdiction to require the production of documents in the Northern District of Alabama as the subpoena directs. A subpoena must be issued "for production or inspection, if separate from a subpoena commanding a person's attendance, from the court for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(C). This subpoena was issued by the U.S. District Court for the Eastern District of New York, but commands that documents be produced at the law offices of Starnes Davis Florie LLP, located in Birmingham, Alabama. As a result, this subpoena is void. *See, e.g., Maynard v. Harrah's Entm't, Inc.*, 09-CV-3128 FB SMG, 2010 WL 1930263, at *4 (E.D.N.Y. May 11, 2010); *Monsanto Co. v. Victory Wholesale Grocers*, MC 08-134DRHWDW, 2008 WL 2066449, at *3 (E.D.N.Y. May 14, 2008); *Insinga v. DaimlerChrysler Corp.*, CIVA306-CV-1305 DEP, 2008 WL 202701, at *1 (N.D.N.Y. Jan. 23, 2008).

2.      Defendants additionally object to the issuance of this subpoena in its entirety for the following reasons: Mr. Collingsworth and Conrad & Scherer, LLP, who are named Defendants in the underlying libel action, *Drummond Co., Inc. v. Collingsworth, et. al.*, were Plaintiffs' counsel in the related litigation of *Balcero, et al. v. Drummond Co., Inc., et al.*, No. 2:09-cv-1041-RDP (N.D. Ala. filed May 27, 2009) (hereinafter "*Balcero*"). Between October 5, 2010 to February 23, 2012, PWA appeared as co-counsel in the *Balcero* litigation. After February 23, 2012, PWA had no involvement with the case. Any responsive document that PWA has or had in its custody, possession or control was provided to them by Defendants or Defendants have the

same documents in their custody, possession or control.  *See* Decl. of Terrence P. Collingsworth, Ex. A to Non-Party Int'l Rights Advocates' Resps. & Objs. to Pl.'s *Subpoena Duces Tecum*, July 31, 2013 ("Collingsworth Decl.").  All of the document requests contained in this subpoena have either already been served on Mr. Collingsworth in his capacity as counsel in the *Balcero* case or as a Defendant in the underlying libel case in which he is a party.  Any responsive documents in PWA's possession, custody, or control have already been produced in the *Balcero* action.  Collingsworth Decl. ¶ 4.  For all these reasons, this subpoena is duplicative of requests already made to Mr. Collingsworth and Conrad & Scherer, LLP as Defendants in the libel action, and/or this subpoena is duplicative of requests that should have been made directly to either the Defendants in the libel action or to plaintiffs in the *Balcero* action.  Given the duplicative nature of the requests, they are designed to harass Mr. Collingsworth, Conrad & Scherer, LLP, and his former co-counsel, PWA, the former two of which have already responded to identical or similar requests.

3.     Defendants object that these Requests are so broad as to request information and documents that are protected by attorney-client privilege and attorney work product, such as attorney notes, internal communications, and legal memoranda, all prepared in the course of and in anticipation of litigation.

4.     Defendants object to the temporal scope of this subpoena, which begins in 2003 and extends through the present, as being overly broad and burdensome given that the allegedly defamatory statements were not made until 2011.

## SPECIFIC OBJECTIONS

### Documents Requested

1. Any  and all documents related or referring to requests for payment or any form of assistance (whether monetary or nonmonetary in nature) by any individual incarcerated in Colombia or any such individual's agent, including but not limited to

   a. Jaime Blanco Maya
   b. Jairo Jesus Charris Castro
   c. Edgar Ariel Cordoba Trujillo
   d. Libardo Duarte
   e. Jhon Jairo Esquivel Cuadrado
   f. Hernan de Jesus Fontalvo Sanchez
   g. Jose Gelvez Albarracin
   h. Alcides Manuel Mattos Tabares
   i. Javier Ernesto Ochoa Quinonez
   j. Jose Aristides Peinado Martinez
   k. Oscar David Perez Bertel
   l. "Halcon"

RESPONSE AND OBJECTION

Defendants object because this Request, which seeks documents related to any payments, is not relevant to the claims or defenses in the above-captioned libel action, nor is the Request reasonably calculated to lead to admissible evidence. Moreover, Halcon is not a witness in the *Balcero* litigation, he did not provide any testimony for the plaintiffs in *Balcero*, and his complete lack of involvement in the case makes facts relating to him irrelevant to this libel action. Additionally, Plaintiff sought the same documents from Defendants in related litigation, which makes this Request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.*, Defendants' Fifth Request for Production in *Balcero*, Request Nos. 12 & 16. Defendants object that this Request is overly broad as it seeks "any and all" documents. Additionally, Defendants object because this Request seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation and the request for "all documents related or referring to . . ." the individuals identified necessarily encompasses attorney notes, research, and internal communications, which are not discoverable. Finally, non-privileged, non work-product protected documents sought by this Request have already been produced by Defendants in either the *Balcero* litigation, through the close of discovery, or in the above-captioned libel case, which is pending in the Northern District of Alabama.

2. Any   and all documents related or referring to requests for payment or other assistance (whether monetary or nonmonetary in nature) by any family member or any individual incarcerated in Colombia, including but not limited to

   a. Jaime Blanco Maya
   b. Jairo Jesus Charris Castro
   c. Edgar Ariel Cordoba Trujillo
   d. Libardo Duarte
   e. Jhon Jairo Esquivel Cuadrado
   f. Hernan de Jesus Fontalvo Sanchez
   g. Jose Gelvez Albarracin
   h. Alcides Manuel Mattos Tabares
   i. Javier Ernesto Ochoa Quinonez
   j. Jose Aristides Peinado Martinez
   k. Oscar David Perez Bertel
   l. "Halcon"

RESPONSE AND OBJECTION

Defendants object because this Request, which seeks documents related to payments, is not relevant to the claims or defenses in the above-captioned libel action, nor is the Request reasonably calculated to lead to admissible evidence. Moreover, Halcon is not a witness in the *Balcero* litigation, he did not provide any testimony for the plaintiffs in *Balcero*, and his complete lack of involvement in the case makes facts relating to him irrelevant in this libel action. Additionally, Plaintiff sought the same documents from Defendants in related litigation, which makes this Request duplicative of information already sought from Defendants and unduly

burdensome. *See, e.g.*, Defendants' Fifth Request for Production in *Balcero*, Request Nos. 12 & 17. Defendants object that this Request is overly broad, as it seeks "any and all documents." Additionally, this Request seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation and the request for "all documents related or referring to . . ." the individuals identified encompasses attorney notes, research, and internal communications, which are not discoverable. Finally, non-privileged, non work-product protected documents sought by this Request have already been produced by Defendants in either the *Balcero* litigation, through the close of discovery, or in the above-captioned libel case, which is pending in the Northern District of Alabama.

3. Any   and all documents related or referring to requests for payment or any form of assistance (whether monetary or nonmonetary in nature) by any individual who (1) has any known connection to Colombian paramilitaries or (2) has been accused by the Colombian government of having a connection to Colombian paramilitaries.

RESPONSE AND OBJECTION

Defendants object because this Request, which seeks documents related to payments, is not relevant to the claims or defenses in the above-captioned libel action, nor is the Request reasonably calculated to lead to admissible evidence. Additionally, Plaintiff sought the same documents from Defendants in a related litigation, which makes this Request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.*, Defendants' Fifth Request for Production in *Balcero*, Request Nos. 12 & 16. This Request is also duplicative of information sought in interrogatories in *Balcero*. *See, e.g.*, Defendants' Fifth Set of Interrogatories in *Balcero*, Interrogatory No. 7. Defendants object that this Request is overly broad, as it seeks "any and all documents." Additionally, this Request seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation, and the request for "all documents related or referring to requests for payment. . ." encompasses attorney notes, research, and internal communications, which are not discoverable. Finally, non-privileged, non-work-product protected documents sought by this Request have already been produced by Defendants in either the *Balcero* litigation, through the close of discovery, or in the above-captioned libel case, which is pending in the Northern District of Alabama.

4. Any   and all documents related or referring to requests for payment or any form of assistance (whether monetary or nonmonetary in nature) by the family member, acquaintance or agent of any individual who (1) has any known connection to Colombian paramilitaries or (2) has been accused by the Colombian government of having a connection to Colombian paramilitaries.

RESPONSE AND OBJECTION

Defendants object because this Request, which seeks documents related to payments, is not relevant to the claims or defenses in the above-captioned libel action, nor is the Request reasonably calculated to lead to admissible evidence. Additionally, Plaintiff sought the same

4

documents from Defendants in a related litigation, which makes this Request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.,* Defendants' Fifth Request for Production in *Balcero,* Request Nos. 12 & 17. This Request is also duplicative of information sought in interrogatories in *Balcero. See, e.g.,* Defendants' Fifth Set of Interrogatories in *Balcero,* Interrogatory No. 8. Defendants object that this Request is overly broad, as it seeks "any and all documents." Additionally, this Request seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation, and the request for "all documents related or referring to requests for payment . . ." encompasses attorney notes, research, and internal communications, which are not discoverable. Finally, non-privileged, nonwork-product protected documents sought by this Request have already been produced by Defendants in either the *Balcero* case, through the close of discovery, or in the above-captioned libel case, which is pending in the Northern District of Alabama.

5. Any   and all documents related or referring to payments to individuals incarcerated in Colombia, including but not limited to

   a. Jaime Blanco Maya
   b. Jairo Jesus Charris Castro
   c. Edgar Ariel Cordoba Trujillo
   d. Libardo Duarte
   e. Jhon Jairo Esquivel Cuadrado
   f. Hernan de Jesus Fontalvo Sanchez
   g. Jose Gelvez Albarracin
   h. Alcides Manuel Mattos Tabares
   i. Javier Ernesto Ochoa Quinonez
   j. Jose Aristides Peinado Martinez
   k. Oscar David Perez Bertel
   l. "Halcon"

## RESPONSE AND OBJECTION

Defendants object because this Request, which seeks documents related to payments, is not relevant to the claims or defenses in the above-captioned libel action, nor is the Request reasonably calculated to lead to admissible evidence. Moreover, Halcon is not a witness in the *Balcero* litigation, he did not provide any testimony for the plaintiffs in *Balcero,* and his complete lack of involvement in the case makes facts relating to him irrelevant in this libel action. Additionally, Plaintiff sought the same documents from Defendants in related litigation, which makes this Request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.,* Defendants' Fifth Request for Production in *Balcero,* Request Nos. 12, 16, 17. This Request is also duplicative of information sought in interrogatories in *Balcero. See, e.g.,* Defendants' Fifth Set of Interrogatories in *Balcero,* Interrogatory No. 7. Defendants object that this Request is overly broad, as it seeks "any and all documents." Additionally, this Request seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation, and the request for "all documents related or referring to payments to" the individuals identified encompasses

attorney notes, research, and internal communications, which are not discoverable. Finally, non-privileged, non work-product protected documents sought by this Request have already been produced by Defendants in either the *Balcero* litigation, through the close of discovery, or in the above-captioned libel case, which is pending in the Northern District of Alabama.

6. Any and all documents related or referring to payments to any family members of an individual incarcerated in Colombia including but not limited to

    a. Jaime Blanco Maya
    b. Jairo Jesus Charris Castro
    c. Edgar Ariel Cordoba Trujillo
    d. Libardo Duarte
    e. Jhon Jairo Esquivel Cuadrado
    f. Hernan de Jesus Fontalvo Sanchez
    g. Jose Gelvez Albarracin
    h. Alcides Manuel Mattos Tabares
    i. Javier Ernesto Ochoa Quinonez
    j. Jose Aristides Peinado Martinez
    k. Oscar David Perez Bertel
    l. "Halcon"

RESPONSE AND OBJECTION

Defendants object because this Request, which seeks documents related to payments, is not relevant to the claims or defenses in the above-captioned libel action, nor is the Request reasonably calculated to lead to admissible evidence. Moreover, Halcon is not a witness in the *Balcero* litigation, he did not provide any testimony for the plaintiffs in *Balcero*, and his complete lack of involvement in the case makes facts relating to him irrelevant. Additionally, Plaintiff sought the same documents from Defendants in related litigation, which makes this Request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.*, Defendants' Fifth Request for Production in *Balcero*, Request Nos. 12, 16, 17. This Request is also duplicative of information sought in interrogatories in *Balcero*. *See, e.g.*, Defendants' Fifth Set of Interrogatories in *Balcero*, Interrogatory No. 8. Defendants object that this Request is overly broad, as it seeks "any and all documents." Additionally, this Request seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation and the request for "all documents related or referring to payments to any family members. . ." would encompass attorney notes, research, and internal communications, which are not discoverable. Finally, non-privileged, non work-product protected documents sought by this Request have already been produced by Defendants in either the *Balcero* litigation, through the close of discovery, or in the above-captioned libel case, which is pending in the Northern District of Alabama.

7. Any and all documents related or referring to any form of assistance (whether monetary or nonmonetary in nature) to any individual incarcerated in Colombia, including but not limited to

    a.   Jaime Blanco Maya
    b.   Jairo Jesus Charris Castro
    c.   Edgar Ariel Cordoba Trujillo
    d.   Libardo Duarte
    e.   Jhon Jairo Esquivel Cuadrado
    f.   Hernan de Jesus Fontalvo Sanchez
    g.   Jose Gelvez Albarracin
    h.   Alcides Manuel Mattos Tabares
    i.   Javier Ernesto Ochoa Quinonez
    j.   Jose Aristides Peinado Martinez
    k.   Oscar David Perez Bertel
    l.   "Halcon"

## RESPONSE AND OBJECTION

Defendants object because this Request, which seeks documents related to assistance, is not relevant to the claims or defenses in the above-captioned libel action, nor is the Request reasonably calculated to lead to admissible evidence. Moreover, Halcon is not a witness in the *Balcero* litigation, he did not provide any testimony for the plaintiffs in *Balcero*, and his complete lack of involvement in the case makes facts relating to him irrelevant in this libel action. Additionally, Plaintiff sought the same documents from Defendants in related litigation, which makes this Request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.*, Defendants' Fifth Request for Production in *Balcero*, Request Nos. 12, 16, 17. This Request is also duplicative of information sought in interrogatories in *Balcero*. *See, e.g.*, Defendants' Fifth Set of Interrogatories in *Balcero*, Interrogatory Nos. 7 & 8. Defendants object that this Request is overly broad, as it seeks "any and all documents." Additionally, this Request seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation, and the request for "all documents related or referring to any form of assistance to . . ." the individuals identified would encompass attorney notes, research, and internal communications, which are not discoverable. Finally, non-privileged, non-work-product protected documents sought by this Request have already been produced by Defendants in either the *Balcero* litigation, through the close of discovery, or in the above-captioned libel case, which is pending in the Northern District of Alabama.

    8. Any and all documents related or referring to any form of assistance (whether monetary or nonmonetary) to any family member of an individual incarcerated in Colombia including but not limited to

    a.   Jaime Blanco Maya
    b.   Jairo Jesus Charris Castro
    c.   Edgar Ariel Cordoba Trujillo
    d.   Libardo Duarte
    e.   Jhon Jairo Esquivel Cuadrado
    f.   Hernan de Jesus Fontalvo Sanchez
    g.   Jose Gelvez Albarracin

    h.  Alcides Manuel Mattos Tabares
    i.  Javier Ernesto Ochoa Quinonez
    j.  Jose Aristides Peinado Martinez
    k.  Oscar David Perez Bertel
    l.  "Halcon"

## RESPONSE AND OBJECTION

Defendants object because this Request, which seeks documents related to any form of assistance, is not relevant to the claims or defenses in the above-captioned libel action, nor is the Request reasonably calculated to lead to admissible evidence. Moreover, Halcon is not a witness in the *Balcero* litigation, he did not provide any testimony for the plaintiffs in *Balcero*, and his complete lack of involvement in the case makes facts relating to him irrelevant in this libel action. Additionally, Plaintiff sought the same documents from Defendants in a related litigation, which makes this Request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.*, Defendants' Fifth Request for Production in *Balcero,* Request Nos. 12, 16, 17. This Request is also duplicative of information sought in interrogatories in *Balcero*. *See, e.g.*, Defendants' Fifth Set of Interrogatories in *Balcero*, Interrogatory No. 8. Defendants object that this Request is overly broad, as it seeks "any and all documents." Additionally, this Request seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation, and the request for "all documents related or referring to any form of assistance to . . ." the individuals identified would encompass attorney notes, research, and internal communications, which are not discoverable. Finally, non-privileged, non work-product protected documents sought by this Request have already been produced by Defendants in either the *Balcero* litigation, through the close of discovery, or in the above-captioned libel case, which is pending in the Northern District of Alabama.

  9. Any   and all documents related or referring to the anticipated testimony of individuals incarcerated in Colombia including but not limited to

    a.  Jaime Blanco Maya
    b.  Jairo Jesus Charris Castro
    c.  Edgar Ariel Cordoba Trujillo
    d.  Libardo Duarte
    e.  Jhon Jairo Esquivel Cuadrado
    f.  Hernan de Jesus Fontalvo Sanchez
    g.  Jose Gelvez Albarracin
    h.  Alcides Manuel Mattos Tabares
    i.  Javier Ernesto Ochoa Quinonez
    j.  Jose Aristides Peinado Martinez
    k.  Oscar David Perez Bertel
    l.  "Halcon"

RESPONSE AND OBJECTION

Defendants object because this Request, which seeks documents related to "any and all" documents "referring" to anticipated testimony, is not relevant to the claims or defenses in the above-captioned libel action, nor is the Request reasonably calculated to lead to admissible evidence. Moreover, Halcon is not a witness in the *Balcero* litigation, he did not provide any testimony for the plaintiffs in *Balcero*, and his complete lack of involvement in the case makes facts relating to him irrelevant in this libel action. Defendants object because this Request is overly broad as it seeks "any and all" documents. Additionally, Plaintiff sought the same documents from Defendants in related litigation, which makes this Request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.*, Defendants' Fifth Request for Production in *Balcero,* Request Nos. 11, 12, 14, 18, 19. Additionally, this Request blatantly seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation, and this request for "anticipated testimony" seeks to track PWA's and Defendants' investigations, including attorney notes, research, and internal communications, which are not discoverable. Non-privileged, non work-product protected documents concerning these individuals were previously produced after, in part, a discovery dispute was resolved by the Court in *Balcero*. Plaintiff's request for such documents is an attempt to circumvent another Court's resolution of discovery disputes.

10. Any and all documents related or referring to the actual testimony of individuals incarcerated in Colombia including but not limited to

   a. Jaime Blanco Maya
   b. Jairo Jesus Charris Castro
   c. Edgar Ariel Cordoba Trujillo
   d. Libardo Duarte
   e. Jhon Jairo Esquivel Cuadrado
   f. Hernan de Jesus Fontalvo Sanchez
   g. Jose Gelvez Albarracin
   h. Alcides Manuel Mattos Tabares
   i. Javier Ernesto Ochoa Quinonez
   j. Jose Aristides Peinado Martinez
   k. Oscar David Perez Bertel
   l. "Halcon"

RESPONSE AND OBJECTION

Defendants object because Halcon is not a witness in the *Balcero* litigation, he did not provide any testimony for the plaintiffs in *Balcero*, and his complete lack of involvement in the case makes facts relating to him irrelevant in this libel action. Defendants object because this Request is overly broad as it seeks "any and all" documents. Additionally, Plaintiff sought the same documents from Defendants in related litigation, which makes this Request duplicative of information already sought from Defendants and unduly burdensome. *See, e.g.*, Defendants' Fifth Request for Production in *Balcero,* Request Nos. 12 & 15. Additionally, this Request

9

blatantly seeks documents that are protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation, and this Request for documents related to "actual testimony" seeks to track Defendants' and PWA's investigations, including attorney notes, research, and internal communications, which are not discoverable. Non-privileged, non work-product protected documents concerning these individuals were previously produced after, in part, a discovery dispute was resolved by the Court in *Balcero*. Plaintiff's request for such documents is an attempt to circumvent another Court's resolution of discovery disputes.

11. Any and all documents related or referring to the actual, potential or possible violation of any ethical rules of any jurisdiction, including but not limited to payments to witnesses, in the matter captioned *Claudia Balcero Giraldo, et al. v. Drummond Company, Inc., et al.*, 2:09-cv-1041-RDP (N.D. Ala.), or in the matter captioned *Freddy Locarno Baloco, et al. v. Drummond Company, Inc., et al.*, 7:09-cv-00557-RDP (N.D. Ala.).

## RESPONSE AND OBJECTION

Defendants object because this Request seeks documents that are not relevant to the claims or defenses in the above-captioned libel action, nor is this Request reasonably calculated to lead to admissible evidence. Defendants object that this Request is overly broad, as it requests "any and all documents" related to possible ethical violations in "any jurisdiction." Additionally, Defendants object that this Request is overly broad because documents "related or referring to the actual, potential or possible violation of any ethical rules of any jurisdiction" encompasses information that is protected by the attorney-client privilege and attorney work-product doctrine, as PWA was co-counsel with Defendants in the *Balcero* litigation, and this request for documents related to Defendants' and PWA's assessment of ethical rules seeks to track Defendants' and PWA's investigations, legal research, attorney notes, and internal communications, which are not discoverable.

Dated: August 8, 2013                               Respectfully submitted,

                                                    /s/ *Brad Smith*
                                                    Bradley J. Smith
                                                    State Bar ID: ASB-6847-B52S
                                                    *Attorney for Defendants*

OF COUNSEL:

Clark, Hair & Smith, P.C.
1000 Urban Center Drive
Suite 125
Birmingham, Alabama 35242
205-397-2900
205-397-2901 – Fax
Email: bsmith@chslaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 8th day of August, 2013, I served a copy of the foregoing DEFENDANTS' OBJECTIONS TO PLAINTIFF'S SUBPOENA DUCES TECUM TO PARKER WAICHMAN, LLP via electronic and U.S. First Class Mail on the following counsel:

William Anthony Davis, III, Esq.
H. Thomas Wells, III, Esq.
Benjamin T. Presley
STARNES DAVIS FLORIE, LLP
P.O. Box 59812
Birmingham, Alabama 35259
TDavis@starneslaw.com
htw@starneslaw.com
btp@starneslaw.com

Sara E Kropf
LAW OFFICE OF SARA KROPF PLLC
1001 G Street NW, Suite 800
Washington, D.C. 20001
sara@kropf-law.com

/s/ *Brad Smith*
Bradley J. Smith

11

# EXHIBIT 3

FILED

2012 Mar-08  PM 02:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CLAUDIA BALCERO GIRALDO, et al., | } | |
| | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| v. | } | **Case No.:  2:09-CV-1041-RDP** |
| | } | |
| DRUMMOND COMPANY, INC., et al., | } | |
| | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

The court has before it Defendants' Motion to Compel Interrogatory Responses (Doc. #245) and Plaintiffs' Motion to Compel Production of Responsive Documents and Response to Interrogatory and Memorandum of Authorities (Doc. #246). Both Motions (Docs. #245, 246) were filed on October 25, 2011 and have been fully briefed in accordance with the court's Order of October 26, 2011 (Doc. #248). They are now under submission and before the court for review.

## I.    Discovery Standards Pursuant to Federal Rules of Civil Procedure 26 and 37(a)(3)

Under the Federal Rules of Civil Procedure, a party is permitted to obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense . . . ". FED. R. CIV. P. 26(b)(1). The information sought does not need to be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *see also Adkins v. Christie*, 488 F.3d 1324, 1330 (11th Cir. 2007). District courts can limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit . . .". FED. R. CIV. P. 26(b)(2)(c)(iii). However, courts are required to accord discovery a broad and liberal scope in order

to provide parties with information essential to the proper litigation of all relevant facts, to eliminate

surprise, and to promote settlement. *Hickman v. Taylor*, 329 U.S. 495 (1947). In other words:

> [D]istrict courts have broad discretion in fashioning discovery rules,
> but they are bound to adhere "to the liberal spirit of the [Federal]
> Rules." *Burns v. ThiokolChem. Corp.*, 483 F.2d 300, 305 (5th Cir.
> 1973). The Federal Rules do not give district courts "blanket
> authorization . . . to prohibit disclosure of information whenever it
> deems it advisable to do so, but are rather a grant of power to impose
> conditions on discovery in order to prevent injury, harassment, or
> abuse of the court's processes." *Williams v. City of Dothan, Ala.*, 745
> F.2d 1406, 1416 (11th Cir. 1984) (quoting *Bridge C.A.T. Scan
> Assocs. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d. Cir. 1983)).

*Adkins v. Christie*, 488 F.3d 1324, 1331 (11th Cir. 2007).

A party may seek an order to compel discovery if an opposing party fails to respond to

discovery requests or has an evasive or incomplete response. FED. R. CIV. P. 37(a)(3)(A), (B). In

ruling on a discovery motion, courts consider the totality of the circumstances, weighing the value

of material sought against the burden of providing it, and taking into account society's interest in

furthering the truth-seeking function in a particular case before the court. *See Patterson v. Avery

Dominion Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

II.   **Analysis**

    A.   **The Motion to Compel Interrogatory Responses (Doc. #245)**

        1.   **Responses to Interrogatories Nos. 1 and 3 (Second Set)**

Defendants seek to compel Plaintiffs to respond more fully to certain interrogatories:

- In Interrogatory No. 1, Defendants requested that Plaintiffs:

> Identify each and every "AUC leader" or "member" referenced in
> Paragraphs 8 and 9 of the SAC (Second Amended Complaint) as
> "now speaking freely" or "giving testimony and speaking to
> government and human rights lawyers" regarding their alleged

"relationship" or "alliances" with Defendants. With respect to each person identified in response to this Interrogatory, identify (a) each and every statement he or she has made concerning the Defendants; (b) all testimony he or she has given concerning the Defendants; (c) each and every document concerning his or her statements or testimony regarding the Defendants; and (d) each and every person with knowledge of his or her statements or testimony concerning the Defendants, including but not limited to each "human rights lawyer" to whom he has spoken. (Doc. #245, Exh. A at 4).

• In Interrogatory No. 3, Defendants similarly ask for each statement by "Jorge 40" which form the basis of paragraph 184 of the Third Amended Complaint "that Drummond was one of the U.S. multinationals that provided substantial support to the AUC."

The upshot of these contested requests is that there remain at least four individuals identified by Plaintiffs as having responsive facts but that have not provided declarations – Halcon, Rodrigo Tovar Pupo ("Jorge 40"), Jose Gelvez Albarracin ("El Canoso"), and Wilson Alejandro Tavera Caicedo (Doc. #245, Exh. A at 5-6; Doc. #263 at 2). Each of these persons has been identified in the various amended complaints as having information concerning Drummond's purported support of the AUC. (Doc. #245 at 5). Defendants argue that "[i]f those witnesses have made oral statements regarding Defendants as alleged in the TAC, then those facts are not privileged and must be identified in response to Interrogatory No. 1." (Doc. #245 at 5-6). "[W]here the party seeking discovery can establish that relevant and non-privileged facts remain hidden in an attorney's file" and where production of those facts is essential to the preparation of the party's case, discovery of those facts is proper. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

In response to these interrogatories, Plaintiffs have objected claiming that the requests for information are overly broad, compound, burdensome, and violate attorney-client and work product privileges, but they have focused their argument on privilege issues. (Doc. #245, Exh. A at 4). While declarations from certain witnesses have been provided, and certain meetings have been

3

detailed in discovery responses, Plaintiffs assert that any remaining information that has been requested is protected under the attorney work product doctrine. (Doc. #255 at 3). Plaintiffs argue that the Supreme Court's decision in *Hickman v. Taylor* protects information learned through witness interviews and does not force an attorney to repeat or write out all that witnesses have told him. 329 U.S. at 512-513. "[I]f opinion work product were accessible by opposing counsel much of what is now put down in writing would remain unwritten. In addition, inefficiency, unfairness and sharp practices in the preparation of cases for trial would result." *Williamson v. Moore*, 221 F.3d 1177 (11th Cir. 2000) (internal citations and quotations omitted).

The court agrees with Plaintiffs on this point. The court appreciates an important distinction raised by this case (as compared to the vast majority of cases that have dealt with this issue). The complaints as amended expressly rely on the statements of disclosed witnesses as support for the material allegation that Drummond provided support to the AUC (*see generally* Complaints; *see also* Doc. #263 at 3). Nevertheless, the fact remains that these individuals will be deposed by Defendants.[1] At that time, Defendants will have a full and fair opportunity to question the witnesses' knowledge concerning the allegations of the complaint. For now at least, it is not necessary to consider whether counsel for Plaintiffs might be required to more fully develop for Defendants the "facts" as set forth by the witnesses. Therefore, Defendants' Motion to Compel (Doc. #245), as it relates to the responses to Interrogatories 1 and 3, is **DENIED WITHOUT PREJUDICE.**

---

[1] To accommodate Plaintiffs' counsels' objection, the court will allow deposition questions which explore this subject area with persons who have knowledge of the fact basis for this allegation. The time spent questioning any such deponent on this particular subject will <u>not</u> count against any time limits imposed on depositions in this case.

2.     **Response to Interrogatory No. 19 (Second Set)**

In Interrogatory No. 19, Defendants ask Plaintiffs to identify each person having knowledge of the allegation made in paragraph 266 of the Third Amended Complaint that "Drummond allowed its NAPA parts store to import the chemicals necessary to manufacture cocaine out of raw cocoa, and allowed its coal barges to transport cocaine from Colombia to the U.S." Plaintiffs have identified Jose Gelvez Albarracin ("El Canoso"), Wilson Alejandro Tavera Caicedo, and "a confidential informant," specifically noting that the NAPA allegation is supported solely by the confidential informant. (Doc. #255 at 15). Plaintiffs objected to identifying the confidential informant on the ground of protected work product but as a compromise "provided Defendants with identifying information related to specific allegations and Defendants agreed that if Plaintiffs were not calling the confidential informant ("CI") witness at trial, they need not disclose the CI's name." (Doc. #255 at 13). Plaintiffs also stated to Defendants that they would "provide the name or withdraw the allegation concerning the NAPA parts store only." (Doc. #255 at 15).

Because the parties have already come to a compromise as to this issue, there is nothing left for the court to do other than enforce it. Defendants' Motion to Compel Interrogatory Responses (Doc. #245), as it deals with the identity of the confidential informant, is **GRANTED IN PART**. Plaintiffs are **DIRECTED** to provide Defendants with the name of the confidential informant **by March 30, 2012**, or otherwise withdraw the allegation attributed to that informant by the same date.

3.     **Response to Interrogatory No. 4 (Third Set)**

Interrogatory No. 4 as contained in the third set of interrogatories asks Plaintiffs to describe anything of value offered or given by Plaintiffs or their representatives to any person disclosed in Plaintiffs' Rule 26 disclosures. Plaintiffs have partially responded to this interrogatory, providing

5

information for certain witnesses who are planned to be called at trial, but have asserted attorney work product privilege related to individuals who will not be called at trial. (*See* Doc. #245 at 4; *see also* Doc. #255 at 9). Defendants contend that evidence of payments or offers of payments would be relevant as potentially leading to the discovery of other admissible evidence. (Doc. #263 at 7). "For example, Plaintiffs could have offered to pay a potential witness whose information turned out to be unfavorable to Plaintiffs' case." (Doc. #263 at 7). Defendants do not seek to know every person with whom Plaintiffs have spoken about the case, only those who were paid or offered something of value. (*See* Doc. #263 at 8). Plaintiffs counter that Defendants are "digging for irrelevant information, and seeking to trace all individuals with whom Plaintiffs have spoken . . . Defendants are using this request as a back-door attempt to discover and track counsel's trial strategies and investigations." (Doc. #255 at 10, 12).

Not surprisingly, case law relevant to this issue is sparse, if not altogether non-existent. The issue is further complicated by the apparent fact that Colombian jailed paramilitaries are not willing to talk to anyone unless offered or given something of value. To be sure, Defendants are entitled to know whether Plaintiffs or their representatives offered anything of value to those individuals listed on Plaintiffs' Rule 26 disclosures, and they presumably have been given that information. (*See* Doc. #255 at 9) ("Plaintiffs agreed to respond to interrogatories regarding whether anything of value was given to witnesses or Plaintiffs in this case . . .".). While the court agrees with Plaintiffs that a request for such information as to "any other potential witness" is too broad of a universe, to release that information as it relates to paramilitaries only would serve a legitimate discovery (and litigation) purpose here: to ensure that the testimony of paramilitaries is not put up for sale and discover if, in fact, it has been. As such, Defendants' Motion to Compel Interrogatory Responses (Doc. #245), as

it relates to the information on payments or offers of payment is **GRANTED IN PART** and **DENIED IN PART**, without prejudice, as set forth above.[2]

### B.    The Motion to Compel Production of Responsive Documents (Doc. #246)

Plaintiffs' Motion to Compel Production of Responsive Documents and Response to Interrogatory (Doc. #246) seeks eight categories of information: documents related to a full-page press release that Defendants placed in Colombian newspapers concerning this case; financial documents relating to punitive damages and Plaintiffs' agency and alter ego claims; documents relating to "state action;" certain travel documents relating to agency and alter ego claims; documents regarding Jaime Blanco, a known AUC collaborator and Drummond contractor who is incarcerated for his role in the murder of Drummond union leaders; log books cataloguing the entrance and exit of visitors to Drummond facilities in Colombia; certain documents from key executives' personnel files; and certain documents related to security. (Doc. #246 at 7).

For all but one of the contested documents, a significant portion of the disagreement lies with the time period for which Defendants are willing to produce documents. The Third Amended Complaint alleges wrongdoing by Defendants from 1999 through 2006. (*See, e.g.*, Third Amended Complaint, ¶ 195). "[O]ut of an abundance of caution, Defendants agreed to produce documents from 1996 to 2006." (Doc. #256 at 4, n.2). Defendants assert that counsel for Plaintiffs expressly agreed to that temporal cut off at the outset of discovery during a meet and confer on January 13, 2011 and attach documentation attesting to the same. (Doc. #256, Exh. A at 1, ¶ 1) ("We will search from January 1, 1996 to December 31, 2006, for both hard copy and electronic documents. We will

---

[2] If there are any other groups or persons about which Defendants can present sufficient information that suggests there have been similar payments made, the court will entertain argument that the responses required should be supplemented with responses about those groups or persons.

not search after 2006."); (Doc. #256, Exh. A at email from Terrence Collingsworth) ("[F]ollowing

up on your letter today, we appear to be in agreement on the issues."); (Doc. #256, Exh. B) ("We

agree to your request to produce documents from January 1, 1996 to December 31, 2006."); (Doc.

#256, Exh. C) (addressing various document production issues, but never raising any issue with

regard to the date range for discovery).  Plaintiffs counter that they put Defendants on notice in

correspondence and in oral meet and confers that they did not believe the parties had agreed to

limiting the time period for *all* discovery.  (Doc. #246, Exh. 6 at May 9, 2011 letter) ("Globally,

Defendants have agreed to produce documents beginning in 1996 through 2006, unless otherwise

noted.  Plaintiffs have indicated that in some instances documents and information through the

present are highly relevant or reasonably calculated to lead to admissible evidence).

This set of circumstances does not convince the court that Plaintiffs agreed to a blanket

discovery limitation of 1996 through 2006.  It does, however, convince the court that each request

should be examined closely as to whether an expansion of the time frame might be reasonable as

being calculated to lead to the discovery of admissible evidence in light of the claims and defenses

made part of this litigation.

Each aspect of the aforementioned requests is considered in turn.

1.     **Documents and Interrogatory Responses Related to Press Releases**

In April 2011, Defendants placed a full-page press release in various Colombian newspapers,

which, as translated, was titled "Nothing Stops Them from Destroying Drummond's Good Name."

(Exh. 7 to Doc. #246).  The press release discusses the ongoing litigation in this case, comments on

one of Plaintiffs' attorneys, Terry Collingsworth (and his association with then Birmingham attorney

Garve Ivey), and comments on purported inaccuracies made in a statement made by Libardo Duarte, currently being held at La Picota Prison in Colombia.

In dispute are Plaintiffs' requests for drafts of the press release, communications about the press release, documents related to any other press releases Defendants have placed referencing Plaintiffs' counsel or this litigation, the identity of all persons who drafted, reviewed, and/or approved the press release, and documents supporting and countering statements made in the press release concerning Drummond's operations in Colombia.

a.    <strong>Drafts of the Press Release and Related Communications, and the Identities of Drafters and Reviewers</strong>

Plaintiffs assert that drafts of the press release are relevant to the knowledge Drummond employees have about claims and defenses and show the drafters' thought processes and decisions concerning which information was included in the final draft, and provide fertile ground for questioning during depositions. (Doc. #246 at 5). Defendants counter the applicability of attorney-client privilege and work product doctrine to the drafts of the press release. (Doc. #256 at 4; Exh. 3 to Doc. #246). According to the Defendants, "[b]ecause counsel for Defendants was involved in the preparation of the press release, any drafts or communications regarding the press release are privileged and need not be produced." (Doc. #256 at 4). Moreover, Defendants allege that drafts of and communications regarding the press release have no relevance to the underlying allegations in the Third Amended Complaint as the press release commented on the litigation itself, and not on the "historical facts from the 1999-2006 time frame at issue in this case."[3] (Doc. #256 at 4-5).

---

[3] *See* discussion *supra* Section II.B. regarding the disagreement over the applicable time period.

Plaintiffs complain that Drummond did not focus on the attorney-client and work product privileges in communications regarding the contested drafts. (*See* Doc. #262 at 2). Nevertheless, the fact remains that those privileges are raised here. (Docs. #246, Exh. 3 at 1). Defendants must, however, provide Plaintiffs with a privilege log, cataloguing each draft the April 2011 press release went through and the identities of the drafters and reviewers. Because the press release commented on the status of the litigation and the credibility of a potential witness, it may be relevant to the claims made in this case despite the fact that it was issued after 2006. The court is particularly concerned by the fact that the press release commented on the credibility of a potential witness in this case, and Defendants should remain mindful of how that aspect of the release complicates this issue. Upon completion and production of the privilege log, the parties shall discuss and re-examine whether: (1) any of those drafts should be produced because they disclose "neither confidential client communications made for the purpose of seeking legal advice nor attorney work product," *Calvin Klein Trademark Trust v. Wachner*, 124 F.Supp.2d 207 (S.D. N.Y. 2000), *and* (2) the drafts would be relevant to the claims made in this case, given that they comment primarily on activities (as opposed to historical facts) in the litigation itself. If the parties cannot agree upon a full resolution of the issue, the court will order an *in camera* review of the documents in question. As such, Plaintiffs' Motion to Compel (Doc. #246), as it relates to drafts and communications regarding the April 2011 press release and the identities of the drafters and reviewers, is **GRANTED IN PART** and **DENIED IN PART** without prejudice as set forth above.

      **b.**    **Documents Related to any Other Press Releases**

Although technically part of their motion, Plaintiffs do not make much of an additional pitch for the disclosure of documents related to any other press releases Defendants have placed

referencing Plaintiffs' counsel or this litigation.  (Doc. #246 at 4-5, referencing Third Document Request No. 3).  However, the basis for that request, and the objections thereto, mirror those made with regard to the April 2011 press release.  Defendants are **DIRECTED** to provide Plaintiffs with copies of any other press releases they may have placed *referencing this litigation only*.  Thereafter, counsel for Plaintiffs are **DIRECTED** to review any additional press releases and determine if discovery would be relevant to the claims made in this case.  As such, Plaintiffs' Motion to Compel (Doc. #246), as it relates to documents related to any other press releases, is **GRANTED IN PART** and **DENIED IN PART**, without prejudice, as set forth above.

        c.      **Discovery of the Statements in the Press Release Regarding Drummond's Positive Qualities and Positive Effects**

In the April 2011 press release, Defendants assert the "excellent reputation" of Drummond and noted that the press would be provided with "additional information on all of Drummond's positive qualities and the positive effects the company is having in Colombia."  (Doc. #246, Exh. 7 at 4).  Plaintiffs seek the documents and/or information supporting and countering that statement. (Doc. #246 at 6).  Defendants object that the request is too broad, seeking information outside of the litigation since the press release was advanced six years after the events at issue in this case.[4]  (Doc. #256 at 5) ("Plaintiffs confuse facts and allegations made in support of claims or defenses *in the litigation*, which are relevant, with statements by Drummond made *outside of the litigation* in a press release, six years after the events at issue.") (emphasis in original).  They agree, however, to provide such information if they decide to use it at trial.  (Doc. #256 at 5-6).

---

[4] *See* footnote 1, *supra*.

11

The court agrees that the request, as stated, is overly broad.  This request for information "countering" the statement that Drummond performs "good works" amounts to little more than an invitation to a flea market.  However, because Drummond opened the door to the issue of its "good works" and specifically noted that it would be providing such evidence to the press, Drummond is **DIRECTED** to provide Plaintiffs with the evidence of "good works" they were in fact referencing in the April 2011 press release.  As such, the Motion to Compel (Doc. #246) on this issue is **GRANTED IN PART** and **DENIED IN PART**.

> **2.      Financial Documents Related to Agency, Alter Ego, and Punitive Damage Claims**

Plaintiffs' requests for production numbers 101-103 and 106 (among others not in dispute) seek documents sufficient to show: gross revenue generated by Defendants between 1999 and the present; yearly profit and loss statements and/or yearly income for the same time period; the yearly balance sheets for Defendants; and documents, including communications, concerning taxes paid to the Government of Colombia or the United States government based on yearly production or total yearly revenue earned by Defendants.  (Doc. #246 at 7-8 and Exh. 1; *see also* Doc. #256 at 6).  Plaintiffs contend that the requested information relates to punitive damages (which are available under both the ATS and the TVPA) and claims of agency and alter ego[5] (which, according to Plaintiffs, can be demonstrated at least in part through evidence that Defendants commingled funds, assets, and labor through financial statements and tax returns).  (Doc. #246 at 8-11).  Defendants object to these requests.

----

[5] Plaintiffs' theory is that Drummond Company, Inc. ("DCI") is liable for the actions of Drummond, Ltd. ("DLTD") through an alter ego or agency theory.  (Doc. #246 at 7).

12

As to the disclosure of financial documents for purposes of determining punitive damages, Defendants say the request is premature. (Doc. #256 at 7). They cite (as do Plaintiffs) *Wilson v. Gillis Advertising Co.*, 145 F.R.D. 578 (N.D. Ala. 1993) (Acker, J.) for the proposition that "in a suit involving a federal question where punitive damages are at issue, the financial condition of the defendant is relevant and will be admissible as a factor to be used in determining the amount of punitive damages, if any, to be awarded." *Id.* at 580. However, none of the authorities examined by Judge Acker informed the court at what point in the litigation such information becomes admissible. *See id.* Further research indicates that this remains an open question in the Eleventh Circuit. Because the court has already discussed with the parties that this action will, more than likely, be bifurcated into liability and damage trials (*see generally* Doc. #276), it makes sense that financial information relevant only to the question of punitive damages be left for discovery at a later date. However, whether the information may also be relevant to the liability theories of alter ego and agency is a separate question. (Doc. #246 at 10; *see also* Doc. #262 at 5).

The parties agree that the factors relevant to alter ego control are set forth in *United Steelworkers v. Connors Steel Co.*, 855 F.2d 1499, 1505-1506 (11th Cir. 1988). (Doc. #246 at 9-10; *see also* Doc. #256 at 8). They include: (1) whether DCI owns all or most of the capital stock of DLTD; (2) whether DCI finances DLTD; (3) whether DLTD has grossly inadequate capital; (4) whether DCI and DLTD file consolidated financial statements and tax returns; (5) whether DCI pays the salaries and other expenses or losses of DLTD; and (6) whether DLTD is described as a department or division of DCI.    Defendants have made available to Plaintiffs all of DCI's and DLTD's bank records for the year 2001, including bank statements, bank reconciliations, cancelled checks, and records of all electronic payments. (Doc. #256 at 8). Plaintiffs have yet to review those

13

documents.  (Doc. #256 at 8; *see also* Doc. #262 at 6).  Defendants urge that Plaintiffs should be required to review those documents before Defendants incur additional expense obtaining all of the requested information.  (Doc. #256 at 8).  Alternatively, Defendants suggest that Plaintiffs obtain the information by propounding "a concise interrogatory or two."  (Doc. #256 at 9).

As Defendants acknowledge, some financial documents of DCI and DLTD will undoubtedly shed light on either side of the question of alter ego and/or agency.  However, Defendants argue that certain of the documents requested will shed no light on the question.  For example, statements of yearly revenue (Request No. 101) "would not show whether DCI was the source of DLTD's revenue or whether the revenue was transferred between companies . . . The same is true for yearly profit-and-loss statements and balance sheets."  (Doc. #256 at 9).  The court is inclined to agree that the relevance of these documents is tangential at best.  However, the court does agree with Plaintiffs that they are the masters of their own discovery and that interrogatories addressing questions such as consolidated financial statements and tax returns and salary information may not be sufficient to address their concerns as to these questions, particularly considering their importance to Plaintiffs' theory of liability.  (*See* Doc. #256 at 9; *see also* Doc. #262 at 6).

The best course of action may be to appoint a Magistrate Judge or Special Master for the review of certain of the contested financial documents for the determination of their relevance to the liability claims made in this case.  The parties are to consult and seek to reach agreement on such a procedure, and the court will set a hearing on the question of the contested financial documents by separate order.  In the meantime, this portion of Plaintiffs' Motion to Compel (Doc. #246) is administratively terminated.

3.      **Travel Documents Related to Plaintiffs' Alter Ego/Agency Claims and Allegations that Defendants Assisted, Aided, and Abetted the AUC in Carrying out Murders**

Plaintiffs contend that their requests for certain travel documents fit into the factors relevant to demonstrating agency and alter ego.   (Doc. #246 at 12) ("Specifically, the degree of communications and number and location of meetings are relevant to issues of agency.") (citing *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp.2d 1229, 1243 (N.D. Cal. 2004)).   To that end, Plaintiffs have requested certain travel documents, including: copies of registration of all Drummond aircraft (Request No. 1; *see* Exh. 4 to Doc. #246); all flight plans filed for international travel (Request No. 3; *see* Exh. 4 to Doc. #246); and all passenger manifests showing who flew on each and every segment of each international flight (Request No. 4; *see* Exh. 4 to Doc. #246).   (*See* Doc. #246 at 12, outlining the contested document requests).   Defendants have objected that information related to passenger manifests, flight plans, and registrations are not relevant, not reasonably calculated to lead to admissible evidence, and overly burdensome.   (Doc. #246 at 12; Doc. #256 at 11).

As discussed earlier, many factors may be relevant in demonstrating agency and alter ego. "As we have noted, there is no litmus test for determining whether a subsidiary is the alter ego of its parent.   Instead, we must look to the totality of the circumstances." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).   Three elements must be proved: (1) control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practices in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will, or existence of its own; and (2) such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory

15

or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and (3) the aforesaid control and breach of duty must proximately cause the injury or unjust loss at issue. *United Steelworkers of American v. Connors Steel*, 855 F.2d 1499, 1506-1507 (11th Cir. 1988). It is against this backdrop that the relevance of the contested requests must be considered.

### a.    Requests Related to Aircraft

Plaintiffs contend that the registrations, passenger manifests, and flight plans for direct or indirect flights between Colombia and the United States[6] on Drummond's private aircraft are "highly relevant to the direct support that Drummond provided to the AUC to carry out illegal operations and conduct in Colombia . . . Plaintiffs are entitled to review passenger manifests, cross reference names, consult with witnesses, if so desired, and determine for themselves whether certain names reflect individuals who were members of the AUC or collaborated with the AUC and whom Plaintiffs may want to interview." (Doc. #246 at 12, 14).

As an initial matter, Defendants assert that neither DCI nor DLTD maintain flight plans, "though both companies do have some information related to what flights were taken during the relevant period." (Doc. #256 at 12, n.7). Therefore, the motion to compel (Doc. #246) flight plans is **MOOT**. The issue of the registrations of the planes has not been addressed by Defendants. (Doc. #246 at 12; *see also* Doc. #256 at 11-14). Therefore, the motion to compel (Doc. #246) registrations is **GRANTED**.

As to the passenger manifests "showing who flew on each and every segment of each international flight," Defendants argue the request should be limited to certain key executives. (Doc.

---

[6] According to their Motion, Plaintiffs have limited their request for direct and indirect flights between Colombia and the United States, not for every flight plan over an 11 year period. (Doc. #246 at 15).

#256 at 11).  They also make clear that "passenger manifest information was not computerized until 2004, also making searches of this information burdensome."  (Doc. #256 at 14).  The court understands the burdens facing Defendants in providing this information, but the information is relevant not only to the claims made by Plaintiffs of alter ego/agency, but also, and perhaps more importantly, to allegations that Defendants supported the AUC with the use of equipment and facilities.  (Doc. #262 at 8; *see also* Third Amended Complaint ¶ 267).  Therefore, the motion to compel (Doc. #246) passenger manifests is **GRANTED** for the relevant time period of 1996 to 2006.

### b.   Requests Related to Araujo and Adkins' Travel Records

In their Second Set of Document Requests, Plaintiffs seek all of the travel records of James Adkins and Alfredo Araujo.  (Doc. #246 at 12).  Araujo was dismissed from this case on personal jurisdiction grounds, and has not been named in the Third Amended Complaint.  Adkins is named as a defendant in the Third Amended Complaint, but has recently filed a renewed motion to dismiss. (*See* Doc. #303).  Defendants have objected to producing the travel records for these two individuals, arguing that it is an attempt by Plaintiffs to seek improper jurisdictional discovery to undo those jurisdictional rulings.  (Doc. #256 at 14-15).

But Plaintiffs seem to focus their argument for production of these documents on the theories of alter ego and agency.  (Doc. #262 at 8).  Indeed travel by corporate officers or executives between corporations may serve as some evidence of control by one corporation over another relevant to an alter ego inquiry.  *See Compagnie Francaise d'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 39 (S.D. N.Y. 1984) (holding that where plaintiffs alleged alter ego theory, plaintiffs could seek travel records for certain individuals).  Defendants do not seem to dispute this.  (Doc. #256 at 14-15).  Therefore, the motion to compel (Doc. #246), as it relates to the

travel documents of Araujo and Adkins, is **GRANTED**.  Defendants shall produce to Plaintiffs the travel records of Araujo and Adkins for the time period of 1996 to 2006, to the extent those travel records exist and are kept in the ordinary course of business.

### 4.   Documents Related to State Action

The parties agree that claims for extrajudicial killings under the ATS and TVPA require an assertion that the murders were committed under the color of authority of the Colombian government, and that Drummond aided and abetted or conspired with the AUC, or that the AUC was Drummond's agent.  To obtain evidence related to the "state action" requirement, Plaintiffs seek discovery of all documents related to (and communication with) Mr. Fabio Echeverri, an individual who provided consulting services to Drummond since 1989 and later acted as a member of former Colombian President Alvaro Uribe's administration. (Doc. #246 at 15-16; *see also* Doc. #256 at 15) ("Disclosure of communications between Drummond and Mr. Echeverri is directly relevant to establishing the required elements of state action.").

Defendants offered to produce all communications with Mr. Echeverri that are (1) dated between 2002 and 2004 (when he was a government advisor) and (2) relevant to the allegations in the TAC. (Doc. #246, Exh. 6; *see also* Doc. #256 at 15).  Plaintiffs rejected that offer contending that the two year time frame is too narrow "as [Echeverri] likely continued to use his position in the Colombian government to discuss, negotiate, or otherwise influence matters relevant to the allegations and defenses in this case." (Doc. #246 at 16).  Interestingly, the Third Amended Complaint does not mention Mr. Echeverri, nor do any of the declarations provided by Plaintiffs' witnesses.  As such, Mr. Echeverri's relevance to the claims made in this case appears to be attenuated at best.  Therefore, the court finds that Defendants' position as to this request is

18

reasonable and supported by the issues joined by the parties.  The motion to compel (Doc. #246), as

it relates to documents related to Fabio Echeverri, is **DENIED WITHOUT PREJUDICE.**

> **5.**     **Log Books Related to Entry and Exit of Individuals into Drummond's Colombia Mine, which May Show AUC Access**

In Plaintiffs' First Request for Documents, Request No. 54 seeks "all documents constituting

log books or ledgers of any kind that identified persons who arrived or departed from the Drummond

mine or the Drummond port in Colombia" and, with Request No. 77, "all log books, also known as

*bitacoras*, or similar documents concerning Puerto Drummond, that maintain any record of arrivals

and departures of port visitors, port activities, and/or similar information, beginning in 1999." (Doc.

#246 at 17).  Defendants concur that the presence of AUC's members on Drummond property would

be relevant to the claims made in this case, but counter that a listing of the names of *every* visitor to

the Drummond mines is irrelevant. (Doc. #256 at 16).  Defendants propose a search of the log books

for names (provided by Plaintiffs) of known or suspected AUC members.  (Doc. #256 at 16).

Plaintiffs have rejected that proposal, arguing that it inappropriately places the burden of discovery

on Plaintiffs and would disallow Plaintiffs to cross reference names or aliases with information

already in their possession.  (Doc. #246 at 17).  The cases cited by the parties are not controlling

authorities and, in any event, do not present the unique circumstances relevant here.

The court agrees with both parties that portions of the log books are relevant to the claims

made in the case.  But a request for full access to all log books over a seven year period clearly fails

for over breadth.  Plaintiffs are **DIRECTED** to provide Defendants with a complete list of names

of confirmed or suspected AUC members (including those of "questionable" AUC membership for

cross reference purposes) for Defendants' search within the log books.  As such, the motion to

compel (Doc. #246), as it relates to full access of the log books, is **DENIED WITHOUT PREJUDICE**.

      6.    **Documents from Key Executives' Personnel Files**

Plaintiffs seek discovery of the complete personnel files of Augusto Jiminez, Alfred Araujo, James Adkins, "all other individuals listed in Defendants' initial disclosures who are or were employees of Drummond," and "any current or former employee or agent of any Defendant who is noticed for deposition in the course of this litigation." (Doc. #246, Exh. 2, Request No. 75). Defendants agreed to provide certain information out of the personnel files. Plaintiffs apparently no longer seek the entire files, but continue to seek documents identifying key individuals' positions in the Drummond companies and job descriptions through the present, an identification of which company paid salaries, expense account or travel documents between the U.S. and Colombia contained in the personnel files, and disciplinary actions taken against those individuals concerning issues related to the allegations in the Third Amended Complaint or any issues related to human rights violations. (Doc. #246 at 18-19; *see also* Doc. #256 at 18; Doc. #262 at 12). If limited to the time period of 1999-2006, the court finds these remaining requests for information contained in key executives' personnel files to be within the scope of discoverable evidence. *See Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) ("[T]he discovery of such files is permissible only if: (1) the material sought is clearly relevant and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable."). With that express limitation, the motion to compel (Doc. #246), as it relates to the request for certain additional documents contained in certain personnel files, is **GRANTED**.

### 7.     Documents Related to Jaime Blanco, a Close AUC Collaborator who Provided Food Services for Drummond

Jaime Blanco Maya provided a declaration to Plaintiffs stating that Defendant Alfredo Araujo, the Vice President of Drummond, Ltd., was a long time friend who had close ties to both the AUC and the government. (Doc. #246 at 20). The declaration describes the alleged payment system Drummond established to funnel money to the AUC through Blanco's food services company, ISA. (Doc. #246 at 21). A more recent declaration provides "extensive detail on the intricate scheme Defendants used to make the payments look legitimate." (Doc. #262 at 13). In light of those allegations, Plaintiffs seek the following: documents sent to or received from Blanco or someone on his behalf regarding Drummond's operations in Colombia; documents related to Drummond's award of a contract with Blanco; and documents related to contracts Drummond had with Blanco, including final agreements and drafts. (Doc. #246 at 20). Defendants have agreed to search for and produce any communications with Blanco relevant to the allegations in the Third Amended Complaint, as well as a list of payments made by Drummond to ISA or Blanco. (Doc. #256 at 20). Defendants have also agreed to produce any final agreements with Blanco. (Doc. #256 at 20). They state that they are "considering" issues related to Blanco requests in light of "Blanco's new allegations." (Doc. #256 at 21).

It appears to the court that the parties are still working on a resolution to the outstanding discovery requests dealing with Blanco. Therefore, this portion of the motion to compel (Doc. #246) is administratively terminated without prejudice, and the parties are to report if this issue needs further judicial attention.

## 8.    Documents Related to Security Policies

Plaintiffs have made a number of requests related to both formal and informal security policies, practices, procedures, and guidelines provided to Drummond in Colombia. (Doc. #246 at 23). The relevance of these documents is purportedly based on allegations that Drummond directly supported the AUC as part of its involvement in ongoing hostilities in Colombia, and that the AUC increased its power and efficacy as a direct result of Drummond's support. (Doc. #262 at 10). Defendants have agreed to provide certain documents related to security policies, but have limited their production to documents between 1996 and 2006 on the basis that documents after 2006 are not relevant to Plaintiffs' claims and that any policy documents touching upon remedial measures after 2006 are inadmissible. (Doc. #246 at 24; *see also* Doc. #256 at 22 and Doc. #262 at 11) ("Defendants should not have to produce documents beyond 2006 because they are not relevant to the claims and defenses here and would also be inadmissible as remedial measures.") Plaintiffs contend that post-2006 security documents are relevant because they would show "the feasibility of Drummond conducting its operations in Colombia without deliberately embroiling itself in the civil conflict and funding an organization to kill hundreds or thousands of innocent civilians or the feasibility of implementing other security measures to protect Drummond's interests that did not necessitate active participation in the civil conflict." (Doc. #246 at 25).

Defendants have never raised this feasibility argument; that is, they have never contended or suggested that it was not feasible for them to operate in Colombia without paying any money to the AUC. (Doc. #256 at 23). Because Defendants have not raised this argument of defense, and because the relevant time period for the claims presented in this case is 1996 through 2006, the

22

motion to compel, as it relates to post 2006 security documents, is **DENIED WITHOUT PREJUDICE**.

### III.   Conclusion

Defendants' Motion to Compel Interrogatory Responses (Doc. #245) and Plaintiffs' Motion to Compel Production of Responsive Documents and Response to Interrogatory (Doc. #246) are **GRANTED IN PART**, **DENIED IN PART**, and **ADMINISTRATIVELY TERMINATED** as set forth above.

**DONE** and **ORDERED** this _____8th_____ day of March, 2012.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

23

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| DRUMMOND COMPANY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-11-P-3695-S |
| | ) | |
| | ) | |
| TERRENCE P. COLLINGSWORTH, | ) | |
| individually and as agent of Conrad & | ) | |
| Scherer, LLP; and CONRAD & | ) | |
| SCHERER, LLP. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SECOND AMENDED RESPONSE TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Comes now Defendants, by and through undersigned counsel, and amends their responses to Plaintiff's First Request for Production as follows:

1.      The right to object to any of the responses or documents produced based upon competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose in any subsequent proceeding in, or the trial of, this or any other action.

2.      The right to object to the use of any of these responses, or the documents produced, in any subsequent proceeding in, or the trial of, this or any other action.

3.      The right to object on any ground at any time to a demand for any further response to these or any other document requests or other discovery procedures involving or relating to the subject matter of these documents responses, subject to lawful provisions and obligations under the Federal Rules of Civil Procedure or any Local Rule of this Honorable Court.

4.      The right to withhold production of documents that may be responsive to the document requests based on objections made herein, including but not limited to objections that a particular request is overbroad and unduly burdensome, but to produce documents to the extent the requests are not objectionable.

5.      The right to supplement or revise these objections and responses at any time as required by the Federal Rules of Civil Procedure.  Responses to discovery are made with the understanding that Defendants have not completed their legal or factual

investigation, discovery, and/or trial preparation and the responses set forth below are based upon only the information currently available and known following a reasonable and diligent investigation in responding to these document requests with the time and resources available.

## GENERAL OBJECTIONS

Defendants made the following objections, which Defendants incorporate into their responses to the Request for Production below:

1.      Defendants object to each Definition, Instruction, and Request for Production to the extent it purports to require the production of information beyond the scope of that which is required by the Federal Rules of Civil Procedure.

2.      Defendants object to Instruction 10 as overly broad, unduly burdensome, and vague and ambiguous as to "written the power of any of the Defendants, or their attorneys, employees, agents or representatives, to obtain from sources under their control," because it exceeds the scope of the Federal Rules of Civil Procedure.

3.      Defendants objects to certain Requests for Production to the extent it seeks the disclosure of information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

4.      Defendants object to certain Requests for Production to the extent they are vague and ambiguous.

5.      Defendants object to certain Requests for Production to the extent they seek irrelevant information or information not likely to lead to the discovery of admissible evidence.

6.      Defendants object to certain Requests for Production to the extent they are overly broad or unduly burdensome.

7.      Defendants object to certain Request for Production to the extent they are duplicative or cumulative.

8.      Defendants object to certain Requests for Production to the extent they seek information not within Plaintiffs' knowledge, possession, custody, or control.

9.      Defendants object to certain Requests for Production to the extent they seek public or other information as readily accessible to Plaintiffs as it is to Defendants.

10.     Each one of the foregoing General Objections is hereby incorporated into the following specific responses to the enumerated Requests for Production.

2

## RESPONSES

1.      All documents which Defendants assert support the veracity of the statement that Colombian citizens "had a family member murdered by paramilitary forces working on behalf of Drummond."

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, Auto defenses Unidas de Colombia (AUC), to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the statement that the Plaintiffs in *Balcero* "had a family member murdered by paramilitary forces working on behalf of Drummond."**

**In addition, by way of supplementation, Defendant states the following are responsive to the request:**

*See generally* **Dkt. 346, Ex. A, Pls' Revised Excel Spreadsheet listing decedents' occupations as civilians, the place of death in Drummond's area of operation, and describing decedents being killed by paramilitaries of the AUC Northern Block.**

*Balcero Litigation* **Gloria Navarro Dep.**

*Balcero Litigation* **PLS00004050-00004054**

*Balcero Litigation* **Carlos Latorre Dep.**

*Balcero Litigation* **Claudia Balcero Dep.**

*Balcero Litigation* **PLS00000889, PLS00002502**

**PLS00000365 municipal certification.**

*Balcero Litigation* **Gelvez Dep.**

*Balcero Litigation* **(Gelvez Decl.)**

3

*Balcero Litigation* **Duarte Dep.**

*Balcero Litigation* **Blanco Dep.**

*Balcero Litigation* **Charris Dep.**

*Balcero Litigation* **El Tigre Dep.**

*Balcero Litigation* **Samario Dep.**

*Balcero Litigation* **Reinel Gomez Dep.**

*Balcero Litigation* **Carlos Latorre Dep.**

*Balcero Litigation* **Marina Barboza Dep.**

*Drummond I Litigation* **Victor Marenco Dep.**

*Drummond I Litigation* **Juan Carlos Quintero Dep.**

*Balcero Litigation* **(El Tigre Decl.)**

*Balcero Litigation* **Gelvez Dep**

*Balcero Litigation* **PLS00003679A-00003691A**

*Balcero Litigation* **CharrisDep**

*Balcero Litigation* **El Tigre Dep**

*Balcero Litigation* **Samario Dep**

*Balcero Litigation* **(Yuca Decl.)**

*Balcero Litigation* **PLS00004156-00004159**

2.      All documents which Defendants assert support the veracity of the statement that Drummond engaged in a "public relations effort to spread half-truths about the status of the human rights lawsuits against it."

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation or likely to lead to admissible evidence and is overly broad and designed to be burdensome. Subject to these objections, Defendants will produce a full page ad that Drummond took out in several news outlets in Colombia that contains false and misleading information**

about Drummond's relationship to the AUC and that defames Mr. Collingsworth. Defendants also refer Plaintiff to documents produced with its initial disclosures.

3. All documents which Defendants assert support the veracity of the statement that Drummond "has an atrocious human rights record."

RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the statement that Drummond "has an atrocious human rights record."

In addition, by way of supplementation, Defendant states the following are responses to the request:

*Drummond I Litigation* Victor Marenco Dep.

Furthermore, the produced media accounts are responsive to Plaintiff's request.

4. All documents which Defendants assert support the veracity of the statement that "in 1999" Drummond "made an alliance with the United Self Defense Forces of Colombia ("AUC"), the umbrella paramilitary group of Colombia.

RESPONSE: Defendants object on the grounds that this Request is vague, overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balceroet. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant states the following are responsive to the request:

*Balcero Litigation* Gelvez Dep.

*Balcero Litigation* (Gelvez Decl.)

*Balcero Litigation* Duarte Dep.

*Balcero Litigation* Blanco Dep.

*Balcero Litigation* Charris Dep.

*Balcero Litigation* El Tigre Dep.

*Balcero Litigation* Samario Dep.

*Balcero Litigation* Reinel Gomez Dep.

*Balcero Litigation* Carlos Latorre Dep.

*Balcero Litigation* Marina Barboza Dep.

*Drummond I Litigation* Victor Marenco Dep.

*Drummond I Litigation* Juan Carlos Quintero Dep.

5.     All documents which Defendants assert support the veracity of the statement that "Drummond continued its unlawful alliance" with the AUC "until 2006."

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.**

In addition, by way of supplementation, Defendant states the following are responsive to the request:

*Balcero Litigation* **Samario Dep.**

*Balcero Litigation* **(Samario Decl.)**

*Balcero Litigation* **Dkt. 313-1 (Blanco Decl.)**

*Balcero Litigation* **(Peinado Decl.)**

*Balcero Litigation* **DR206677**

*Balcero Litigation* **DR206748, 206750, 206751**

    6.    All documents which Defendants assert support the veracity of the statement that Drummond prevailed in the initial litigation arising out of the murders of three union leaders "because this was before the AUC's demobilization, and there was no AUC leader willing to talk about the AUC's *ongoing* relationship with Drummond."

**RESPONSE: Defendants object on the grounds that this Request is overly broad, vague and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents and the dates they were created support the referenced statement.**

    7.    All documents which Defendants assert support the veracity of the statement that "111 people…were executed by the AUC acting on behalf of Drummond."

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in**

murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant reasserts and incorporates its response to Plaintiff's Request for Production RFP 1.

8.    All documents which Defendants assert support the veracity of the statement that "Drummond made an arrangement with the AUC in which Drummond supplied funds, logistical support, vehicles and other equipment, and a base of operation to the Front."

RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant reasserts and incorporates its response to Plaintiff's RFP 1, 4, & 5.

9.    All documents which Defendants assert support the veracity of the statement that, in exchange for Drummond's alleged support, "the Front was to clear the areas around the Drummond mine and rail line of any guerilla groups, their supporters and sympathizers."

RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant reasserts and incorporates its response to Plaintiff's RFP 1, 4, & 5.

10. All documents which Defendants assert support the veracity of the statement that "[a]s a matter of fact, with Drummond's support, the Front went from a small band of 20 thugs to a fighting force of 150 well equipped and trained soldiers."

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.**

In addition, by way of supplementation, Defendant states the following are responsive to the request:

*Balcero Litigation* (El Tigre Decl.)

*Balcero Litigation* El Tigre Dep.

*Balcero Litigation* Samario Dep

*Balcero Litigation* Gelvez Dep

11. All documents which Defendants assert support the veracity of the statement that "Drummond's mandate to the AUC led to the violent slaughter of hundred of innocent civilians."

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balceroet. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes,**

9

including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant states the following are responsive to the request:

*Balcero Litigation* (El Tigre Decl.)

*Balcero Litigation* GelvezDep

*Balcero Litigation* (Peinado Decl.)

*Balcero Litigation* CharrisDep

*Balcero Litigation* El Tigre Dep

*Balcero Litigation* Samario Dep

*Balcero Litigation* (Yuca Decl.)

*Balcero Litigation* PLS00004156-00004159

12.   All documents which Defendants assert support the veracity of the statement that Colombian government "collaborat[ed] with the AUC."

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.**

13.   All documents which Defendants assert constitute "good information from Colombia of" the Colombian government's alleged corroboration with the AUC.

10

**RESPONSE:** Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant reasserts and incorporates its response to Plaintiff RFP 1, 3, 5, 10 & 18.

14. All documents which Defendants assert support the veracity of the statement that Drummond committed "atrocities," including, but not limited to, "human rights atrocities," in Colombia.

**RESPONSE:** Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant reasserts and incorporates its response to Plaintiff RFP 1, 3, 5, 10 & 18.

15. All documents which Defendants assert show "[t]he role of the Drummond Company in major human rights violations in Colombia."

11

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.**

**In addition, Defendant supplements its response and reasserts and incorporates its responses to Plaintiff's RFP 1, 3, 4, 5, 10, & 8.**

16. All documents which provide "objective information about the new, credible statements of Drummond's participation in human rights crimes in Colombia"

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.**

**In addition, Defendant supplements its response and reasserts and incorporates its responses to Plaintiff's RFP 1, 3, 4, 5, 10, & 8.**

17. All documents which Defendants assert support the veracity of the statement that government officials from the Netherlands, Drummond representatives, Drummond's lawyers at Baker Botts, and Ecopetrol representatives "participated in a conference call to discuss my January 18, 2011 letter."

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation or likely to lead to admissible evidence and is overly broad and designed to be burdensome. Further, this request improperly seeks internal legal work product that is protected by the**

12

attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, see produced weblog.

18.    All documents which Defendants assert support the veracity of the statement that "Drummond can clearly get away with murder, extortion and major theft in Colombia."

RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. These documents support the referenced statement. Defendants note that in January, 2013, the Colombian government began an investigation of Drummond's involvement in murders committed by the AUC. Further, the Colombian government recently suspended Drummond's right to export coal from Colombia based on serious environmental violations. It may no longer be the case that Drummond can "get away with" criminal activity in Colombia, but at the time the Letters were drafted and sent, as far as Defendants know, the Colombian authorities had not taken any steps to hold Drummond accountable for its unlawful conduct.

In addition, by way of supplementation, Defendant states the following are responsive to the request:

*Balcero Litigation* DRUM0000393-0000394

1/25/13 Sentencing of Jaime Blanco Maya

Defendant also refers Plaintiff to document provided in response to RFP #1 for evidence that hundreds of Colombian citizens had a family member murdered by paramilitary forces working for Drummond.

Furthermore, documents produced in response to RFP #11 evidence that Drummond's mandate to the AUC led to the violent slaughter of hundreds of innocent civilians.

19.    All documents which Defendants assert support the veracity of the statement that "powerful interests are aligned to protect Drummond."

RESPONSE: Defendants object on the grounds that this Request is overly broad, vague, and designed to be burdensome. Further, this Request improperly seeks

13

internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant refers Plaintiff to documents evidencing Drummond's payments to the Columbian military and the deposition of Garry Drummond.

20.    All documents which Defendants assert support the veracity of the statement that there are "hundreds of Colombian victims of Drummond's human rights violations."

RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, Defendant supplements its response and reasserts and incorporates its responses to Plaintiff's RFP 1, 3, 5, 10, & 18.

21.    All documents which Defendants assert support the veracity of the statement that Drummond, the Dutch government, and Ecopetrol "act[ed] in concert against the interests of Llanos Oils and its two principals, the Dutch nationals Hendrik and Albert van Bilderbeek."

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence.  Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly

seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants do not have the requested documents in their possession, custody or control.

In addition by way of supplementation, Defendant refers Plaintiffs to the Llanos Oil website for responsive documents.

22.    All documents which Defendants assert support the veracity of the statement that "Drummond is complicit in human rights violations in Colombia."

RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant reasserts and incorporates its responses to Plaintiff's RFP 1, 3, 14, 16, & 20.

23.    All documents which Defendants assert support the veracity of the statement that Drummond "has a record for major human rights crimes."

RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement. Defendants also note that there is a significant public record in the State of Alabama of Drummond's systematic anti-union activities.

15

24.    All documents which Defendants assert support the veracity of the statement that Drummond has "direct involvement in war crimes and other major human rights violations in Colombia."

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.**

**In addition, by way of supplementation, Defendant reasserts and incorporates its response to Plaintiff's RFP 1, 4, 5, 10, 11, & 20.**

25.    All documents which Defendants assert support the veracity of the statement appearing in the September 19, 2011 Letter that "AUC paramilitaries stopped a bus full of Drummond workers returning from the company's mine in La Loma, Colombia."

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.**

**In addition, by way of supplementation, Defendant refers Plaintiff to documents produced in response to RFP 27 & 28.**

16

26.    All documents which Defendants assert support the veracity of the statement that the AUC paramilitaries referenced in Drummond's Request for Production #25 "asked for Locarno and Orcasita by name."

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in** *Balcero et. al v. Drummond Company Inc.***, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.**

**In addition, by way of supplementation, Defendants state the following are responsive:**

*Drummond I Litigation* **Declaration of Aristide Antonia Serna Maldonaldo**

*Drummond I Litigation* **Declaration of Juan Carlos Rojas.**

27.    All documents which Defendants assert support the veracity of the statement that the AUC paramilitaries referenced in Drummond's Request for Production #25 "said 'these two have a problem with Drummond.'"

**RESPONSE: Defendants object on the grounds that this Request improperly seeks internal legal work product that is protected by the attorney-client privilege. Subject to and without waiving this objection, there is no document evidence to support the referenced statement.**

**In addition, by way of supplementation, Defendants states the following are responsive to the request:**

**Defendants reassert and incorporate its response to Plaintiff's RFP 26.**

28.    All documents which Defendants assert support the veracity of the statement that Gustavo Soler "was subsequently pulled from a bus and killed by paramilitaries."

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence.  Defendants also object on the grounds that this Request**

improperly seeks internal legal work product that is protected by the attorney-client privilege. Subject to and without waiving this objection, there is no document evidence to support the referenced statement.

In addition, by way of supplementation, Defendant states the following are responsive to the request:

*Balcero Litigation* Charris Dep.

*Balcero Litigation* (Charris Decl.)

*Balcero Litigation* (Peinado Decl.)

*Balcero Litigation* DR000161

Defendant further states the produced July 2007 Amnesty International Report is responsive as well as the produced media accounts.

29.    All documents which Defendants assert support the veracity of the statement that "AUC leaders" engaged in "long-term collaboration with Drummond."

RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant reasserts and incorporates its response to Plaintiff's RFP 1, 4, 5, 10, & 11.

30.    All documents which Defendants assert support the veracity of the statement that any past or present Drummond employee, including, but not limited to, James Adkins and Alfredo Araujo, "paid the AUC to murder the union leaders."

RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal

legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement.

In addition, by way of supplementation, Defendant reasserts and incorporates its responses to Plaintiff's RFP 1, 4, 5, 10, 11, 18, & 20.

31.     All documents which Defendants assert support the veracity of the statement that the AUC engaged in a "scorched earth campaign around the rail corridor that led to hundreds of deaths of innocent civilians."

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

32.     All documents which Defendants assert support the veracity of the statement that "Drummond joined forces with the AUC, a terrorist organization."

**RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections,**

Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

33.   All documents which Defendants assert support the veracity of the statement that AUC commanders "were paid by Drummond to murder and commit war crimes."

RESPONSE: Defendants object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waiving these objections, Defendants refer Drummond to all of the documents compiled and submitted by the Plaintiffs in opposition to the summary judgment motion filed by Defendant Drummond Ltd. in *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP, which catalogues the evidence that Drummond aided and abetted and conspired with the terrorist paramilitary group, AUC, to commit war crimes, including extrajudicial killings. Defendants also note that there is an ongoing criminal investigation by Colombian authorities of Drummond's involvement in murders committed by the AUC and this process should yield additional evidence of Drummond's unlawful conduct. These documents support the referenced statement. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

34.   All versions of the documentary film titled "The Coca-Cola Case," including unedited, uncut, and/or original versions.  This request includes all footage associated with the documentary, including any footage taken at any point during the filming of the documentary, regardless of whether the footage was ultimately included in the film documentary and regardless of whether the footage was taken with the intent of including it in the documentary.

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to

lead to admissible evidence.   Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Subject to and without waiving these objections, Defendants do not have the requested documents in their possession, custody or control.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

35.   All documents, including any scripts, notes, or memorandums, relating to the film titled "The Coca-Cola Case."

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence.   Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Subject to and without waiving these objections, Defendants do not have the requested documents in their possession, custody or control.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

36.   All communications relating to the film titled "The Coca-Cola Case."

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence.   Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Subject to and without waiving these objections, Defendants do not have the requested documents in their possession, custody or control.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

37.   All communications with the National Film Board of Canada, including any employees or agents thereof.

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence.   Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Subject to and without waiving these objections, Defendants do not have the requested documents in their possession, custody or control.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

38.   All documents evidencing any communication between the Defendants and Mr. Steven Donziger.

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to

lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Subject to and without waiving these objections, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

39. All documents evidencing any communications between the Defendants and Mr. Daniel Kovalik.

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

40. All documents evidencing any communications between the Defendants and Mr. Ray Rogers.

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney work product doctrine. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

41. All contracts between either Defendant and Llanos Oil and/or Llanos Oil principals, including Hendrik van Beilderbeek and Albert van Bilderbeek.

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

42. All contracts between either Defendant and Hendrik van Bilderbeek and/or Albert van Bilderbeek.

22

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence.  Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

43.     From January 1, 2000 to the present, all communications, including, but not limited to, e-mails, letters, faxes, and voicemails, between Defendants and Llanos Oil or any of its principals, representatives, agents or employees.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence.  Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

44.     From January 1, 2000 to the present, all communications, including, but not limited to, e-mails, letters, faxes, voicemails, between Defendants and Llanos Oil or any of its principals, representatives, agents or employees by the Defendants.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence.  Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

45.     From January 1, 2000 to present, all communications sent to any person, governmental entity, governmental agency, corporation, association, or trade union by either or both Defendants on behalf of Llanos Oil or any of its principals, representatives, agents or employees.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to**

lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

46.    From January 1, 2000 to present, all communications sent to any person, governmental entity, governmental agency, corporation, association, or trade union by either or both Defendants referencing the Drummond litigation or including statements regarding Drummond's alleged collaboration with the AUC.

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney work product doctrine. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

47.    From January 1, 2000 to the present, all documents pertaining to Defendants' access, use, review, editing, and/or monitoring of Llanos Oil's weblogs, including any correspondence between Defendants and Llanos Oil or any of its principals, representatives, agents or employees pertaining to Llanos Oil's weblog.

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving these objections, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

48.    All drafts, including unedited versions, of the January 18, 2011 letter addressed to the Prime Minister of the Netherlands. This request includes the "native" electronic file for the January 18, 2011 Letters, including all metadata associated with the Letter.

RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Subject to and without waiving this objection, Defendants do

**not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

49.    All drafts, including unedited versions, of the February 4, 2011 letter addressed to the Prime Minister of The Netherlands. This request includes the "native" electronic file for the January 18, 2011 Letter, including all metadata associated with the Letter.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Subject to and without waiving this objection, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

50.    All drafts, including unedited versions, of the September 19, 2011 letter addressed to Masahiro Okafuki, the President and CEO of the Itochu Corporation. This request includes the "native" electronic file for the September 19, 2011 Letter, including all metadata associated with the Letter.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Subject to and without waiving this objection, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

51.    All documents, including an envelope, a facsimile cover sheet, U.S. Certified Mail receipt, or payment receipt which indicate the date and/or time when Defendants sent the January 18, 2011 Letter to the Prime Minister of The Netherlands.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants admit that Mr. Collingsworth sent the referenced Letter. Subject to and without waiving this objection, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

52.    All documents, including an envelope, a facsimile cover sheet, U.S. Certified Mail receipt, or payment receipt which indicate the date and/or time when Defendants sent the February 4, 2011 Letter to the Prime Minister of The Netherlands.

25

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants admit that Mr. Collingsworth sent the referenced Letter. Subject to and without waiving this objection, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

      53.    All documents, including an envelope, a facsimile cover sheet, U.S. Certified Mail receipt, or payment receipt which indicate the date and/or time when Defendants sent the September 19, 2011 Letter to the President and CEO of Itochu Enterprises.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants admit that Mr. Collingsworth sent the referenced Letter. Subject to and without waiving this objection, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

      54.    All documents, including an envelope, a facsimile cover sheet, U.S. Certified Mail receipt, or payment receipt which indicate the date and/or time when Defendants sent the January 18, 2011 Letter to Llanos Oil or any of its principals, representatives, agents or employees.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

      55.    All documents, including an envelope, a facsimile cover sheet, U.S. Certified Mail receipt, or payment receipt which indicate the date and/or time when Defendants sent the February 4, 2011 Letter to Llanos Oil or any of its principals, representatives, agents or employees.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

56.    All documents, including an envelope, a facsimile cover sheet, U.S. Certified Mail receipt, or payment receipt which indicate the date and/or time when Defendants sent the September 19, 2011 Letter to Llanos Oil or any of its principals, representatives, agents or employees.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence.  Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

57.    All documents or communications Defendants have received from any person, corporation, company, partnership, trade association, labor union, governmental entity, international organization, non-profit organization, or any other entity which references the January 18, 2011 Letter or statements made therein.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence.  Subject to and without waiving this objection, Defendants do not have the requested documents in their possession, custody or control.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

58.    All documents or communications Defendants have received from any person, corporation, company, partnership, trade association, labor union, governmental entity, international organization, non-profit organization, or any other entity which references the February 4, 2011 Letter or the statements made therein.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence.  Subject to and without waiving this objection, Defendants do not have the requested documents in their possession, custody or control.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

59.    All documents or communications Defendants have received from any person, corporation, company, partnership, trade association, labor union, governmental entity, international organization, non-profit organization, or any other entity which references the September 19, 2011 Letter or the statements made therein.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence.  Subject to and without waiving this objection, Defendants do**

not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

60.    From January 18, 2011 to present, all communications between any government officials in The Netherlands and the Defendants.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Subject to and without waiving this objection, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

61.    From September 19, 2011 to present, all communications between the Itochu Corporation and the Defendants.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Subject to and without waiving this objection, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

62.    From January 1, 2000 to present, all documents evidencing any type of payment from Llanos Oil or any of its principals, representatives, agents or employees of Defendants.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Subject to and without waiving this objection, Defendants do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

63.    From January 1, 2000 to present, all documents evidencing any type of payment from Llanos Oil or any of its principals, representatives, agents or employees.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

28

64.    From January 1, 2000 to present, all documents, including, but not limited to, bills, invoices, cancelled checks, wire transfers, bank statements, expense reports, tax returns, loan documents, payroll records, receipts, and credit card statements, which evidence all expenses and costs that Defendants have incurred in pursuing litigation against Drummond.  This request includes, but is not limited to, attorneys' fees, court costs, clerical expenses, mileage reimbursement, travel costs and reimbursement, plan ticket purchases, court reporter bills, hotel bills, rental care expenses, witness travel expenses, copying expenses, expert witness fees, meal expenses, and expenses associated with any and all meetings of potential plaintiffs in Colombia.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad, not properly limited in time and scope, and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks strategic information relating to the pending case of *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP that Drummond could not obtain in that case.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

65.    From January 1, 2000 to present, all documents evidencing the provision of financial support, including checks, cash, wire transfers, deposits, line of credit, and/or loans, from any person, corporation, company, partnership, trade association, union, governmental entity, international organization, or any other entity, to either or both Defendants, which was used to compensate Defendant Terrence Collingsworth, Defendant Conrad & Scherer, LLP, and/or any Conrad & Scherer employee for their work in pursuing litigation against Drummond.  This request includes any documents evidencing money received from any person, corporation, company, partnership, trade association, union, governmental entity, international organization, or any other entity which was used to pay for any costs associated with Defendants' pursuit of litigation against Drummond, including attorneys fees, court costs, and other litigation expenses.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks strategic information relating to the pending case of *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP that Drummond could not obtain in that case. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

66.    From January 1, 2000 to present, all communications between Defendants and any person, corporation, company, partnership, trade association, labor union, governmental entity, international organization, non-profit organization, or any other entity pertaining to the Defendants' request for financial support, including, but not limited to, the payment of attorneys fees, in the litigation against Drummond.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks strategic information relating to the pending case of *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP that Drummond could not obtain in that case.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

67.    From January 1, 2000 present, all communications to Defendants from any person, corporation, company, partnership, trade association, labor union, governmental entity, international organization, non-profit organization, or any other entity pertaining to an offer to provide Defendants with financial support, including, but not limited to, the payment of attorneys fees, in the litigation against Drummond.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks strategic information relating to the pending case of *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP that Drummond could not obtain in that case.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

68.    From January 1, 2000 to present, all contingency fee agreements entered into by Defendants and any client they represented in the litigation against Drummond.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks**

strategic information relating to the pending case of *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP that Drummond could not obtain in that case. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

69.    From January 1, 2000 to present, all agreements entered into by Defendants and any person, corporation, company, partnership, trade association, labor union, governmental entity, international organization, non-profit organization, or any other entity which provided for any contingency fee to be paid to either or both Defendants which was to be paid upon the outcome of the litigation against Drummond.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks strategic information relating to the pending case of *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP that Drummond could not obtain in that case. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

70.    From January 1, 2000 to present, all correspondence between Defendants and any person, corporation, company, partnership, trade association, union, governmental entity, international organization, or any other entity which gives a report, summary, outlook, assessment, or evaluation of the litigation against Drummond.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks strategic information relating to the pending case of *Balcero et. al v. Drummond Company Inc.*, et. al, No. 2:09-cv-1041 RDP that Drummond could not obtain in that case. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

71.    All communications between the Defendants and any other person, corporation, company, partnership, trade association, union, governmental entity, international organization, or any other entity regarding the allegation that Drummond collaborated with the AUC or the accusation that Drummond is guilty of human rights violations.   This request does not include communications with Drummond or its attorneys.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad, not properly limited in time and scope, and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks strategic information relating to the pending case of** *Balcero et. al v. Drummond Company Inc.,* **et. al, No. 2:09-cv-1041 RDP that Drummond could not obtain in that case. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

72.    A copy of all insurance policies, including, but not limited to, any of Defendant Terrance Collingsworth's personal or professional liability insurance policies, which may provide coverage for the claims asserted against Defendants in this lawsuit, which is styled *Drummond Co. v. Terry Collingsworth, et al.,* 2:11-cv-3695-WMA.

**RESPONSE: Defendants object to this request to the extent it seeks legal conclusions. Without waiving its general and specific objections, Defendants state it has previously produced its insurance policy to Plaintiff. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

73.    For every year from 2000 to present, a copy of Defendant Terrance Collingsworth's federal and state income tax returns.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

74.    For every year from 2000 to present, a copy of any documents which reflect the hours worked by Defendant Terrance Collingsworth at Conrad & Scherer, LLP.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this request improperly seeks internal legal work product that is protected by the attorney-client privilege**

32

and/or attorney work product doctrine.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.

75.    For every year from 2000 to present, a copy of any documents which reflect the hours worked by any Conrad & Scherer, LLP, shareholder or employee relating to litigation against Drummond.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome.  Further, this request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or attorney work product doctrine.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

76.    For every year form 2000 to present, a copy of Defendant Conrad & Scherer, LLP's federal and state income tax returns.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

77.    From January 1, 2000 to present, all documents, including, but not limited to, checks, bank statements, receipts, tax returns, cancelled checks and wire transfers, evidencing any personal monies expended by Defendant Terrance Collingsworth which are related in way to litigation against Drummond.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

78.    All documents evidencing any communication between Defendant Collingsworth and any other employee or shareholder at Conrad & Scherer, LLP, regarding the January 18, 2000 Letter.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney work product doctrine. Without waiving its general and specific objections, Defendants state they do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

79.     All documents evidencing any communication between Defendant Collingsworth and any other employee or shareholder at Conrad & Scherer, LLP, regarding the February 4, 2011 Letter.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney work product doctrine. Without waiving its general and specific objections, Defendants state they do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

80.     All documents evidencing any communication between Defendant Collingsworth and any other employee or shareholder at Conrad & Scherer, LLP, regarding the September 19, 2011 Letter.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney work product doctrine. Without waiving its general and specific objections, Defendants state they do not have the requested documents in their possession, custody or control. This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

81.     All documents reflecting any presentation, analysis, report, summary, update, status, or cost of litigation against Drummond which were referenced, used or distributed in any meeting involving any Conrad & Scherer, LLP, shareholder.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks strategic information relating to the pending case of** *Balcero et. al v. Drummond Company Inc.*, **et. al, No. 2:09-cv-1041 RDP that Drummond could not obtain in that case.   This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

82.    All contacts, letter agreements, retention agreements, or fee agreements entered into by either or both Defendants and any Alabama law firm, including, but not limited to, any such contracts, letter agreements, retention agreements or fee agreements entered into with the following attorneys or firms:  former Alabama attorney Garve Ivey, attorney Thomas Carmichael, the law firm of Wiggins, Childs, Quinn, & Pantazis, P.C., and the law firm of Whatley Drake & Kallas.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome. Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks strategic information relating to the pending case of** *Balcero et. al v. Drummond Company Inc.*, **et. al, No. 2:09-cv-1041 RDP that Drummond could not obtain in that case.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

83.    All contracts, letter agreements, retention agreements, or fee agreements entered into by either or both Defendants and any Alabama citizen, corporation, business client, or business entity that does business in Alabama.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

84.    All contacts, letter agreements, retention agreements, or fee agreements entered into by either or both Defendants and any citizen, corporation, business client, or business entity that does business in Alabama.

35

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad, not properly limited in time and scope, and designed to be burdensome.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

85.    From January 1, 2000 to present, all documents, including plane tickets, credit card statements, hotel bills, invoices, credit card receipts, and expense reports evidencing any money expended in Alabama by either Defendant.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

86.    All documents, including formal written grievances, professional complaints, Bar association complaints, civil complaints, contempt orders, and criminal complaints, which allege that either Defendant engaged in unethical, illegal, unprofessional, or tortuous conduct.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

87.    All documents, including written opinions, sanction letters, civil judgments, and criminal judgments in which Defendants were found to have violated state or federal law, any ethical obligation, or any professional code of conduct.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

88.    All documents evidencing the payment, by either Defendant, of any fine or civil penalty levied against either or both Defendants as the result of a professional

complaint, a formal written grievance, a Bar association complaint, a civil complaint, contempt order, or criminal proceeding.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

89.    All repots, correspondence, or other documents prepared by any expert witness retained by Defendants in this matter, provided to any expert witness retained by Defendants in this matter, or received from any expert witness retained by Defendants in this matter.

**RESPONSE: All responsive documents will be produced pursuant to the Court's Scheduling Order or the Federal Rules of Civil Procedure.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

90.    Defendants' entire file pertaining to *Estate of Rodriguez v. Drummond Co., Inc.*, CV-02-BE-0665-W.

**RESPONSE: Defendants object on the grounds that this Request seeks information that is not relevant or material to claims or defenses in this litigation, or likely to lead to admissible evidence. Defendants also object on the grounds that this Request is overly broad and designed to be burdensome.  Further, this Request improperly seeks internal legal work product that is protected by the attorney-client privilege and/or the attorney work product doctrine. The Request also improperly seeks strategic information relating to the pending case of *Estate of Rodriguez v. Drummond Company Inc., et. al* that Drummond could not obtain in that case.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

91.    A curriculum vitea of every expert witness Defendants expect to call as a witness at the trial of this matter.

**RESPONSE: All responsive documents will be produced pursuant to the Court's Scheduling Order or the Federal Rules of Civil Procedure.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

92.    All documents which Defendants assert support any of the affirmative defenses set forth in their Answer to the Complaint.

**RESPONSE: The documents Defendants have previously referenced herein will support their affirmative defenses that are based on establishing that Drummond cannot establish a prima facie case.  As to the other purely legal affirmative defenses, Defendants have no other document other than case law and statutes to support their defenses, and this legal research is attorney work product and as such is not discoverable.  This Defendant further objects that this request for production exceeds the amount permitted by the Court's scheduling order.**

Done this the 21st day of June, 2013.

/s/ Bradley J. Smith
Bradley J. Smith
State Bar ID:  ASB-6847-B52S
Attorney for Defendants

OF COUNSEL:

Clark, Hair & Smith, P.C.
1000 Urban Center Drive, Suite 125
Birmingham, Alabama  35242
205-397-2900
205-397-2901 - Fax
Email:  bsmith@chslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the below counsel on the 21st day of June, 2013 via electronic mail, U.S. Mail, and/or the CM/ECF system:

William Anthony Davis, III, Esq.
H. Thomas Wells, III, Esq.
Starnes Davis Florie, LLP
P.O. Box 59812
Birmingham, Alabama  35259
205-868-6000
205-868-6099
twells@starneslaw.com

/s/ Bradley J. Smith
Of Counsel

38

# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Claudia Balcero Giraldo, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:09-cv-1041-RDP |
| | ) | |
| Drummond Company, Inc.; Drummond Ltd.; | ) | |
| Augusto Jiménez; Alfredo Araujo; and | ) | |
| James Adkins, | ) | |
| | ) | |
| Defendants. | ) | |

**FIFTH SET OF REQUESTS OF DEFENDANTS
DRUMMOND COMPANY, INC. AND DRUMMOND LTD.
FOR PRODUCTION OF DOCUMENTS BY PLAINTIFFS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendants Drummond Company, Inc. and Drummond Ltd. request that Plaintiffs produce for inspection and copying the documents described below.

**DEFINITIONS AND INSTRUCTIONS**

1. The term "Plaintiff" or "Plaintiffs" refers to every person identified as such in paragraphs 17 through 161 of the Third Amended Complaint and his or her agents or representatives.

2. The term "Decedent" refers to any person with respect to whom any Plaintiff seeks to recover damages in this case.

3. The term "TAC" refers to the Third Amended Complaint in this proceeding.

4. The term "communication" means and shall be deemed to refer to any writing or oral conversation, including, but not limited to, telephone conversations, conversations in meetings, letters, e-mails, voice mails, memoranda, notes, or telegraphic and telex communications.

1

5. The term "document" means the original and all non-identical copies of any written, printed, typed, photographic and recorded matter of any kind or character, however produced or reproduced, and any tangible thing which, in whole or in part, illustrates or conveys information in your possession, custody, or control, whether produced or stored on paper, cards, tapes, disks, belts, charts, film, computer storage devices, microfilm, magnetic and electronic recordings, sound recordings, computer print-outs or records. The term "document" shall also include any and all drafts and non-identical copies of the aforementioned. For example, and not by way of limitation, the term "document" includes data on a computer hard drive or network; includes telephone message slips; includes desk calendars and "day planners;" includes electronic-mail (whether on hard copy or computer readable memory), and includes recordings or transcriptions of telephone messages and voice mail.

6. A document shall be deemed to "refer," "reflect," or "relate" to a matter if it expressly or otherwise refers to the matter or if its subject matter bears a clear logical relationship to this matter.

7. To the extent a privilege is claimed with respect to any document (or part of a document) covered by this Request, please detail the following information:

    a.    The author of such document;

    b.    To whom such document is addressed; each and every person who received a copy of such document; and each and every person who had access to such document;

    c.    The date upon which such document was prepared;

    d.    The title or heading of such document;

    e.    The type of document (*e.g.*, handwritten notes, memorandum, tape recording, journal, desk calendar, books of account, etc.);

    f.    Any other information that might be necessary to describe such document sufficiently for designation thereof;

g.   The present location and custodian of such document;

h.   If a privilege is claimed with respect to such document, the full and complete grounds upon which the claim of such privilege is made, including the substance of the communication sufficient to permit a third party to evaluate the claim of privilege.

If a privilege is claimed only as to part of a document or thing, please produce all other parts as to which no privilege is being claimed.

8.   If a document otherwise responsive to this Request has been destroyed, deleted, or lost, or is otherwise unavailable, set forth with particularity, for each such document;

a.   The author of such document;

b.   To whom such document was addressed, and each and every person who received a copy of such document;

c.   The date upon which such document was prepared;

d.   The title or heading of such document;

e.   The type of document (*e.g.*, handwritten notes, memorandum, tape recording, journal, desk calendar, books of account, etc.);

f.   The contents of the document, as fully as possible and in form as close to verbatim as is possible; and

g.   The circumstances of the document's destruction, deletion, loss, or unavailability, including the person or persons who occasioned such loss, the reason for the loss, the date of the loss, what precautions had been taken to prevent the loss, and what efforts have been taken to retrieve or recreate the document.

9.   Documents produced in response to this Request shall be arranged in separate categories identified by paragraph number of this Request to which such documents are responsive, or produced as kept in the ordinary course of business.

10. Please produce all responsive documents that are (a) in the possession, custody or control of any of the Plaintiffs; (b) in the possession, custody or control of any of the Plaintiffs' attorneys, employees, agents or representatives; or (c) within the power of any of the Plaintiffs,

or their attorneys, employees, agents or representatives, to obtain from sources under their control.

11. Should you or others subject to your control, including your attorneys, become aware of documents responsive to this Request subsequent to your initial production, such documents shall promptly be made available for inspection and copying.

12. Attachment A to these Requests includes the names of individuals (a) named in Plaintiffs Rule 26 disclosures, (b) who have provided declarations in this litigation for Plaintiffs, (c) for whom Plaintiffs have requested testimony by letters rogatory, (d) that Plaintiffs have requested Defendants search Drummond Ltd.'s log books pursuant to the Court's March 8, 2012 order, or (e) were included in No. 9 of Plaintiffs' Sixth Set of Requests For Documents. Should Plaintiffs amend their Rule 26 disclosures, request additional letters rogatory, produce additional declarations for individuals not contained on this list, add additional names to the list of names for the search in the log books, or serve additional discovery requests for documents related to specific individuals, Plaintiffs are requested to supplement the answers to these Requests to include those individuals.

13. This Request is continuing to the greatest extent possible permitted by the Federal Rules of Civil Procedure.

## REQUESTS

1. All documents supporting or contradicting any of Plaintiffs' responses to the Fifth Set of Interrogatories of Drummond Co., Inc. and Drummond Ltd. to Plaintiffs.

2. All documents referring or relating to any statements by public officials relating to the deaths of the decedents in the TAC, including, but not limited to those referenced in paragraphs 145, 147, 153, and 158.

4

3. All documents referring or relating to the alleged employment by Drummond contractors Franklin Rafael Martinez Reyes and Jairo de Jesus Ponzo Rua, as alleged in paragraphs 160 and 161 of the TAC.

4. All documents referring to relating to Tolemaida's alleged attempts to "bribe or threaten" witnesses, as alleged in paragraph 265 of the TAC.

5. All documents referring or relating to Drummond's alleged "support" of Tolemaida, as alleged in paragraph 265 of the TAC.

6. All communications between any Plaintiff or anyone acting on Plaintiffs' behalf including counsel, and (a) Hernando Bocanegra, or (b) Ivan Otero, concerning any of the defendants, the allegations in the TAC, or any of the individuals listed in Attachment A.

7. All communications by any Plaintiff or anyone acting on Plaintiffs' behalf including counsel, with any journalist or anyone working for any media outlet in the United States or Colombia (including newspapers, television stations or any web-based media source) referring or relating to any of the defendants in this litigation, from 2002 to the present.

8. All documents relating or referring to Jaime Blanco, including any accounting records from his company ISA or any documents that support or contradict any of the statements made in his declaration of October 14, 2011, and in his testimony pursuant to the letter rogatory.

9. All documents provided to any Plaintiff or anyone acting on Plaintiffs' behalf including counsel, by Jaime Blanco including but not limited to documents relating to, regarding, supporting or contradicting his declaration of October 14, 2011, or his testimony pursuant to the letter rogatory.

10. All communications between any Plaintiff or anyone acting on Plaintiffs' behalf including counsel, and any family member of any of the individuals listed on Attachment A.

5

11. All documents relating to, regarding, supporting or contradicting any of the statements in the declarations produced by Plaintiffs in this litigation.

12. All documents referring or relating to any of the individuals listed on Attachment A.

13. All documents referencing or relating to the offer or provision of advice, assistance or support to anyone listed on Attachment A or to any present or former paramilitary, by any Plaintiff or anyone acting on Plaintiffs' behalf including counsel. Such discussion, advice, assistance or support may concern, but is not limited to, these individuals' defense against criminal charges, participation in the Justice & Peace Process, request for extradition to the United States, or reduction of a criminal sentence in Colombia.

14. All communications between the individuals listed on Attachment A or their representatives and any Plaintiff or anyone acting on Plaintiffs' behalf including counsel.

15. All testimony or public statements and any documents referring to any testimony or public statements by any of the individuals listed on Attachment A.

16. All documents referencing or relating to anything of value given or offered to any present or former paramilitary or anyone listed on Attachment A, by any Plaintiff or anyone acting on Plaintiffs' behalf including counsel.

17. All documents referencing or relating to anything of value given or offered to the family member of any Colombian paramilitary or to the family member of anyone listed on Attachment A, by any Plaintiff or anyone acting on Plaintiffs' behalf including counsel.

18. All drafts of declarations produced by Plaintiffs in this litigation if such drafts were reviewed by witnesses, anyone acting on behalf of the witness, or any third party outside of Plaintiffs' legal team.

6

19. All documents relating to, regarding, supporting or contradicting any statements in any draft declarations referred to in Request No. 18.

20. All "documents, photos or other sources of information" referenced in paragraph 22 of the declaration by Edgar Ariel Cordoba Trujillo.

21. All documents referring to Prodeco or to any employees of or activities related to Prodeco.

22. All documents referencing or referring to complaints or reports made to the Colombian government based on the alleged bribes and threats to witnesses in this litigation, or anyone listed on Attachment A.

23. All documents referencing or referring to the alleged bribes and threats to witnesses in this litigation.

24. Any and all documents, including drafts of declarations, prepared by or received from a person listed on Attachment A, relating or referring to any issue in this litigation or to Drummond.

25. All questionnaires or documents containing specific questions given to any of the individuals listed on Attachment A and any responses to those questions by these individuals.

Dated: May 15, 2012

/s/ William H. Jeffress, Jr.
William H. Jeffress, Jr.
David A. Super
Sara E. Kropf
Rachel B. Cochran
Baker Botts L.L.P.
1299 Pennsylvania Avenue, NW
Washington, DC  20004-2400
(202) 639-7700
fax: (202) 639-7890

/s/ William A. Davis, III
William A. Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
Starnes Davis & Florie LLP
P.O. Box 59812
Birmingham, AL  35259
(205) 868-6000
fax: (205) 868-6099

Attachment A

1. Jaime Blanco Maya
2. Jairo Jesus Charris Castro
3. Edgar Ariel Cordoba Trujillo (alias "57")
4. Libardo Duarte (alias "Bam Bam")
5. Jhon Jairo Esquivel Cuadrado (alias "El Tigre")
6. Hernan de Jesus Fontalvo Sanchez (alias "Pajaro")
7. Jose Gelvez Albarracin
8. Alcides Manuel Mattos Tabares (alias "Samario")
9. Javier Ernesto Ochoa Quinonez (alias "el Mecanico")
10. Jose Aristides Peinado Martinez
11. Rafael Garcia
12. Jimmy Rubio
13. Alias "Halcon"
14. Edwin Guzman
15. Oscar Jose Ospino Pacheco (alias "Tolemaida")
16. Rodrigo Tovar Pupo (alias "Jorge 40")
17. Salvatore Mancuso Gomez (alias "Mono Mancuso/Triple Cero")
18. Luis Francisco Robles Mendoza (alias "Amaury")
19. Adolfo Enrique Guevara Cantillo (alias "101")
20. Carlos Maria Garcia Avila (alias "Gonzolo," "Medico")
21. Edgar Ignacio Fierro Flores (alias "Don Antonio")
22. Juan Carlos Sierra Ramirez (alias "El Tuso")
23. Diego Fernando Murillo Bejarano (alias "Don Berna")
24. Javier Enrique Coronado Sarmiento
25. Hernan Mejia Gutierrez
26. Jairo Alfonso Samper Cantillo (alias "Lucho")
27. Oscar David Perez Bertel (alias "Yuca")
28. Alexander Pieneta (Alias Reyes)
29. -Carlos Castaño
30. -Colonel Hernan Mejia Gutierrez
31. -David Hernandez Rojas (Alias 39)

8

32. -Edwin Angulo Blanco

33. -Enrique López (Alias Omega)

34. -Guillermo Sanchez Quintero

35. -Hugues Manuel Rodríguez Fuentes (alias Barbie)

36. -Jader Luis Morales Benites (Alias JJ)

37. -Javier Racaman

38. -Jorge Castro Pacheco

39. -Jorge Gnecco

40. -Jose Daza Ortiz

41. -Jose Gregorio Mangones Lugo (Alias Carlos Tijeras)

42. -Luis Carlos Marciales Pacheco (Alias Cebolla)

43. -Luis Hernando Ochoa

44. -Manuel Gutierrez

45. -Mauricio Narvaez Garcia (Alias Jhonny, El Cali)

46. -Mauricio Llorente

47. -Rafael Barrios (Alias El Burro)

48. -Raul Hasbun (Alias Pedro Bonito)

49. -Santiago Tobon

50. -Vicente Castaño (Alias El Profe)

51. -Wilson Alejandro Tavera Caicedo

52. -Wilson Posada

53. -Alias Adinael

54. -Alias Carepapa

55. -Alias 05

56. -Alias 4.4

57. -Alias Alex el Calis

58. -Alias Amin

59. -Alias Cacheco

60. -Alias Calanga

61. -Alias Cortico

62. -Alias Don Luis

63. -Alias Efrain

64. -Alias El Bobo

9

65. -Alias El Buffalo

66. -Alias El Cachaco

67. -Alias El Chino

68. -Alias El Chispa

69. -Alias El Enano

70. -Alias El Flaco

71. -Alias El Maximo

72. -Alias El Miyo

73. -Alias El Pirulo

74. -Alias El Pocho

75. -Alias El Roque

76. -Alias El Toro

77. -Alias Eli Huano

78. -Alias Freddy

79. -Alias Gabarra

80. -Alias Guerrero

81. -Alias Jorge Cachorro

82. -Alias Kener

83. -Alias Kevin

84. -Alias Machoman

85. -Alias Mañe

86. -Alias Miche

87. -Alias Muela

88. -Alias Negro Condeza

89. -Alias Pelo de Puya

90. -Alias Pigua

91. -Alias Pigua

92. -Alias Pizarro

93. -Alias Rafa

94. -Alias Satanas

95. -Alias Saul

96. Carlos Mario Garcia, alias "Gonzalo"

97. Oscar Luis

98. Alias "Boris"

99. Alias "Boca Gato"

100.    Alias "Raton"

101.    Javier Lopez (Alias Canoso)

102.    Alias "Baltazar"

103.    Alias "Augusto"

104.    William Rivas (Alias 44)

105.    Alias "Virgilio"

106.    Alias "Samuel"

107.    Alias "Martin"

108.    Pedro Arce

109.    Manuel Gutierrez

110.    Luis Hernando Ochoa

111.    Javier Recaman

112.    Nohora Delgadillo

113.    Lino Sanchez

11

## CERTIFICATE OF SERVICE

I certify that on this 15th day of May 2012, I caused a copy of the foregoing Fifth Set of Requests of Defendants Drummond Company, Inc. and Drummond Ltd. for Production of Documents by Plaintiffs to be served by email on all counsel of record.

/s/ Sara E. Kropf
Sara E. Kropf

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

2011 OCT 21  A 10: 59

U.S. DISTRICT COURT
N.D. OF ALABAMA

DRUMMOND COMPANY, INC.,       )
                              )
        Plaintiff,            )
                              )
vs.                           )
                              )
TERRENCE P. COLLINGSWORTH,    )     CIVIL ACTION NO. _____
individually and as agent of Conrad &   )
Scherer, LLP; and CONRAD &    )           CV-11-AR-3695-S
SCHERER, LLP,                 )
                              )
        Defendants.           )

## **COMPLAINT**

COMES NOW the Plaintiff, Drummond Company, Inc. (hereinafter "Drummond"), by and through the undersigned counsel, and hereby files this Complaint against the Defendants, Terrence P. Collingsworth and Conrad & Scherer, LLP.

## PARTIES

1.    Plaintiff Drummond is a for profit Alabama corporation with its principal place of business in Birmingham, Alabama.

2.    Defendant Terrence P. Collingsworth is an individual who, upon information and belief, is domiciled in the District of Columbia.  Collingsworth is sued both individually and as an agent of Conrad & Scherer, LLP.  Collingsworth

is a partner at Conrad & Scherer, LLP.  During the time relevant to this Complaint, Terrence P. Collingsworth has conducted business in Birmingham, Alabama.

      3.     Defendant Conrad & Scherer, LLP is a limited liability partnership with its principal place of business in Fort Lauderdale, Florida.  During the time relevant to this Complaint, Conrad & Scherer, LLP has conducted business by agent in Birmingham, Alabama.

JURISDICTION AND VENUE

      4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy, including compensatory and punitive damages, exceeds $75,000.

      5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because Defendants' libelous statements were, and are currently being, circulated within this judicial district, and the Defendants are subject to personal jurisdiction in this judicial district.

FACTUAL ALLEGATIONS

      6.     Collingsworth is a partner of Conrad & Scherer, LLP who, since 2009, has been admitted *pro hac vice* in Alabama relating to two lawsuits he has filed against Drummond in which he alleges Drummond has ties to paramilitaries in Colombia, specifically the United Self-Defense Forces of Colombia ("AUC"). Between 2002 and 2007, Collingsworth was also admitted *pro hac vice* in Alabama

2 of 10

{B1342630}

relating to a similar lawsuit, which resulted in a dismissal in favor of Drummond and a jury verdict in favor of the remaining defendants.

7.      Collingsworth also has a financial arrangement with Llanos Oil Exploration Limited ("Llanos Oil") and its two principals, Hendrik Van Bilderbeek and Albert Van Bilderbeek.  Hendrik Van Bilderbeek is currently in prison in Colombia based on allegations of money laundering and involvement with Colombian drug-traffickers.

8.      Llanos Oil purports to be an oil exploration company, and has made wild allegations that the Colombian government conspired with Drummond to "steal" certain mineral rights in Colombia leased by Llanos Oil.

9.      On January 18, 2011, subsequent to entering into a financial arrangement with Llanos Oil, Collingsworth wrote a letter to the Prime Minister of the Netherlands, as well as to other Dutch government officials, urging the government of the Netherlands to stop any business relationship it has with Drummond.

10.     In the January 18, 2011 letter, Collingsworth characterized as "objective facts" numerous false and defamatory statements about Drummond. For example, Collingsworth stated:

a. that "hundreds of Colombian citizens . . . had a family member murdered by paramilitary forces working on behalf of Drummond;"

{B1342630}

b. that Drummond "has an atrocious human rights record;"

c. that Drummond "made an alliance with the United Self Defense Forces of Colombia ('AUC'), the umbrella paramilitary group in Colombia;"

d. that the "AUC was designated a terrorist organization by the U.S. government in 2001, yet Drummond continued its unlawful alliance until 2006, when the AUC demobilized as part of the Justice and Peace program in Colombia;"

e. that "[a]s a matter of objective fact, with Drummond's support," a particular Front of the AUC "went from a small band of 20 thugs to a fighting force of 150 well equipped and trained soldiers;" and

f. that "Drummond's mandate to the AUC led to the violent slaughter of hundreds of innocent civilians."

11.    Not one of these statements—or any of Collingsworth's other statements in the January 18, 2011 letter accusing Drummond of human rights crimes and complicity with a terrorist organization—is true. At the time of writing the letter, Collingsworth knew these statements were false and/or acted with reckless disregard to whether they were false or not. Upon information and belief, the letter was written in furtherance of Collingsworth's plan with Llanos Oil and its principals to publicly defame Drummond and harm its business interests.

{B1342630}

12.   The January 18, 2011 letter was, upon information and belief, immediately provided to Llanos Oil by Collingsworth with the purpose and/or with knowledge that it would be published on Llanos Oil's website.  On January 19, 2011, the day after it was written, the letter was published on Llanos Oil's website which is accessible, and has been accessed, in Birmingham, Alabama.

13.   On February 4, 2011, Collingsworth wrote another letter to Dutch government officials.  This time, Collingsworth had apparently been given access to and reviewed weblogs from Llanos Oil's website, and based on these weblogs he accused Dutch government officials of participating in a conference call with Drummond and its attorneys to discuss the January 18, 2011 letter.

14.   In the February 4, 2011 letter, Collingsworth made additional false and defamatory statements about Drummond, including, but not limited to, accusing it of being able to "get away with murder" and stating that there were "hundreds of Colombian victims of Drummond's human rights violations."

15.   Again, Collingsworth's accusations of murder and human rights violations are completely false.  At the time of writing the letter, Collingsworth knew these statements were false and/or acted with reckless disregard to whether they were false or not.  Upon information and belief, the letter was written in furtherance of Collingsworth's plan with Llanos Oil and its principals to publicly defame Drummond and harm its business interests.

{B1342630}

16.    The February 4, 2011 letter was, upon information and belief, immediately provided to Llanos Oil by Collingsworth with the purpose and/or with knowledge that it would be published on Llanos Oil's website. On February 7, 2011, three days after it was written, the letter was published on Llanos Oil's website which is accessible, and has been accessed, in Birmingham, Alabama.

17.    On September 19, 2011, Collingsworth wrote another letter, this time to the President and Chief Executive Officer of Itochu Corporation, which has entered into an agreement with Drummond to acquire a 20% stake in Drummond's Colombian mining operation. In this letter, Collingsworth continues his campaign of defamation against Drummond.

18.    In the September 19, 2011 letter, Collingsworth states as fact that Drummond "has a record of major human rights crimes." He further professes to provide "the facts about Drummond's direct involvement in war crimes and other major human rights violations in Colombia" He states that "Drummond will no doubt continue to deny its crimes" but that "[l]ike many companies operating in Colombia during the civil conflict, Drummond joined forces with the AUC, a terrorist organization." These are but a few examples of the numerous false and defamatory statements contained in the September 19, 2011 letter.

19.    Again, these accusations are completely false. At the time of writing the letter, Collingsworth knew these statements were false and/or acted with

{B1342630}

reckless disregard to whether they were false or not. Upon information and belief, the letter was written in furtherance of Collingsworth's plan with Llanos Oil and its principals to publicly defame Drummond and harm its business interests.

20.    The September 19, 2011 letter was, upon information and belief, immediately provided to Llanos Oil by Collingsworth with the purpose and/or with knowledge that it would be published on Llanos Oil's website. On September 20, 2011, the day after it was written, the letter was published on Llanos Oil's website which is accessible, and has been accessed, in Birmingham, Alabama.

21.    Each of the three letters discussed above were written on Conrad & Scherer, LLP letterhead and with the actual and/or apparent authority of Conrad & Scherer, LLP and/or in the line and scope of Collingsworth's employment with Conrad & Scherer, LLP.

22.    On September 29, 2011, Drummond demanded that Collingsworth and his firm, Conrad & Scherer, LLP, publish a public retraction of the defamatory statements contained in the January 18, February 4, and September 19, 2011 letters.  To date, Collingsworth and Conrad & Scherer, LLP have failed and/or refused to publish a retraction.

23.    At the time the above letters were written, Defendants knew that Drummond was an Alabama corporation with its principal place of business in Birmingham, Alabama.

{B1342630}

24.     Defendants expressly aimed their campaign of defamation at Drummond knowing that it was an Alabama resident and knowing that the brunt of the harm from their campaign of defamation would be felt by Drummond in Alabama.

25.     None of the recipients of the above letters have any connection to any litigation filed by Collingsworth against Drummond.  The letters were not written in furtherance of any legitimate legal proceeding, but rather were written and published on Llanos Oil's website in furtherance of Collingsworth's plan to publicly defame Drummond and harm its business interests.

<u>COUNT I</u>
DEFAMATION

26.     Drummond realleges and incorporates by reference paragraphs 1-25, inclusive, as if fully set forth herein.

27.     Defendants intentionally, maliciously and/or recklessly published and caused to be published false and defamatory statements about Drummond.

28.     Defendants did so knowing that the statements were false and/or acting in reckless disregard to whether they were false or not.

29.     Defendants acted with the intent to prejudice Drummond in the public perception, to injure its business reputation, to deter others from conducting business with Drummond, and to otherwise damage Drummond.

{B1342630}

30.    Drummond has been damaged as a result of Defendants' defamation and hereby demands judgment against the Defendants for general, compensatory and punitive damages as to be determined by a jury, as well as costs and such other relief as the Court or jury deems just.

## AD DAMNUM

Based on the allegations as set forth above, Drummond avers that Defendants are liable for compensatory damages, punitive damages, interest, costs and expenses incurred in pursuing this litigation.  Drummond further avers that punitive damages should be assessed in an amount sufficient to punish the wrongful conduct of Defendants, to deter similar conduct in the future and to serve as an example to deter others from engaging in similar wrongful conduct.

WHEREFORE, Drummond demands judgment for general, compensatory and punitive damages in an amount to be determined by a jury, as well as interest, costs and expenses, and such other relief as the Court and/or jury deem just.

## JURY DEMAND

## DRUMMOND DEMANDS TRIAL BY JURY ON ALL OF THE ISSUES TRIABLE BY A JURY IN THE COMPLAINT

{B1342630}

William Anthony Davis, III (ASB-5657-D65W)
H. Thomas Wells, III (ASB-4318-H62W)
STARNES DAVIS FLORIE LLP
P.O. Box 59812
Birmingham, AL  35259
(205) 868-6000
fax: (205) 868-6099

*Attorneys for Drummond Company, Inc.*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

## MISCELLANEOUS CASE INFORMATION SHEET

| **PLAINTIFF:**<br>DRUMMOND COMPANY, INC. | **DEFENDANT:**<br>TERRENCE P. COLLINGSWORTH, individually and as an agent of Conrad & Scherer, LLP; and CONRAD & SCHERER, LLP |
|---|---|

**IN THE MATTER OF:**
Case No. 2:11-CV-3695-RDP Drummond Company, Inc. v. Collingsworth et al. pending in the Northern District of Alabama, Southern Division

**CAUSE OF ACTION:**
Defamation lawsuit.

**RELIEF SOUGHT:**
MOTION FOR PROTECTIVE ORDER AND/OR MOTION TO QUASH SUBPOENA

| **ATTORNEY FOR PLAINTIFF:**<br>H. Thomas Wells, III, Esq.<br>STARNES DAVIS FLORIE, LLP<br>P.O. Box 59812<br>Birmingham, Alabama 35259<br>Phone: 205-868-6000<br>Fax: 205-868-6099<br>twells@starneslaw.com | **ATTORNEY FOR DEFENDANT:**<br>Thomas M. Mullaney<br>The Law Office of Thomas M. Mullaney<br>489 Fifth Avenue, Suite 1900<br>New York, New York 10017<br>212-223-0800 (Tel.)<br>212-661-9860 (Fax)<br>tmm@mullaw.org |
|---|---|

I am currently a member in good standing of the bar of this Court:   ☑ YES   ☐ NO

Signature of Attorney of Record: _____   Date: 08/23/2013